STATE, EX REL. WM. H. RIGHTMIRE, RECEIVER OF TAXES OF THE CITY OF CAMDEN, v. JONATHAN DUFFIELD, PRESIDENT OF THE CITY COUNCIL OF THE CITY OF CAMDEN, AND D. COOPER CARMAN, CLERK OF SAID COUNCIL.

1. Where no time is fixed by law for the commencement of a term of office, it begins either at the date of the election or appointment, or from the time the person chosen may, by his own act, assume the duties of the office, and not at the time he actually enters upon his duties of the office.

2. A city charter provided that certain officers, including a receiver of taxes, should be elected at the city election, to hold office for the term of three years, and until others are chosen and qualified in their stead. It provided also that such officers should, before entering upon their duties, take an oath of office, and give bond for the performance of official duties, in such sum and with such sureties as the city council should approve. *Held*—

1. That the provision for holding until a successor was qualified was

not designed to extend the tenure of office of the incumbent for his advantage; that its purpose was for public interests, to prevent a vacancy that might occur through delay in his successor's qualifying.

2. A person elected to an office, or re-elected as his own successor, cannot, by his neglect to qualify, prolong the term of his predecessor, or his own prior term, and so postpone the beginning of the term for which he was so elected.

3. The charter empowered the city council, by ordinance, to fix the salary of the receiver of taxes. It provided that no officer of the city government should have his salary increased or diminished during the term for which he was elected or appointed. The relator was elected receiver of taxes March 13th, 1883. He was re-elected at the annual city election, held March 9th, 1886. The city council, whose duty it was to approve official bonds, was in session March 12th, 1886. *Held*, that the relator could not, by postponing the giving of his official bonds, prolong his prior term, and postpone the commencement of his new term, so as to have the benefit of an ordinance increasing the salary of the receiver of taxes, adopted March 18th, 1886.

On application for a *mandamus*.

Argued at June Term, 1887, before Justices DEPUE, KNAPP and MAGIE.

For the relator, *S. H. Grey*.

*Contra, J. Willard Morgan*.

The opinion of the court was delivered by

DEPUE, J. The office of receiver of taxes was created by the charter of the city of Camden of 1871. *Pamph. L.* 1871, *p.* 210.

A. Clifford Jackson, the first receiver of taxes, was elected March 14th, 1871. He qualified by giving bond May 4th, 1871. Jackson was re-elected March 10th, 1874, and gave bond, which was accepted. George M. Thrasher succeeded Jackson. He was elected March 13th, 1877, sworn in March 16th, 1877, and gave bond, which was accepted April 3d, 1877. Thrasher was re-elected March 9th, 1880, and gave bond April 8th, 1880, which was accepted by the council the same day.

Rightmire v. Camden.

The relator, who succeeded Thrasher, was elected March 13th, 1883, sworn in March 16th, 1883, gave bond, which was accepted April 12th, 1883, and entered upon the duties of his office April 16th, 1883. He was re-elected March 9th, 1886, sworn in and gave bond April 6th, 1886, and entered upon the duties of his office, for the second term, April 16th, 1886, and is in office in virtue of this re-election.

The fifth section of the supplement of 1874 to the city charter provides " that the city council, at a meeting preceding the expiration of the term of office of any city, ward or department officer or officers, either elected or appointed, shall fix the salary of said officer or officers by ordinance; and, in case of the neglect or refusal of the said city council to fix the salary of any officer or officers, then the salary theretofore paid for similar services shall be considered the salary of said officer or officers for his or their term of service; and no officer under the city government, or employed in any department, either elected or appointed, shall have his salary, fees or emoluments of office increased or diminished during the term for which he was elected or appointed." *Pamph. L.* 1874, *p.* 181.

By an ordinance passed March 18th, 1886, the salary of the receiver of taxes, which had been theretofore $1800 per annum, was increased to $2500 a year, payable monthly. This ordinance took effect immediately on its adoption.

The relator claims that he is entitled to the salary prescribed by the ordinance last mentioned. The validity of his claim depends upon the effect of section 5 of the supplement of 1874, above quoted. Is the relator disqualified to have the increased salary fixed by the ordinance by that part of section 5 of the act of 1874 which prohibits the increase of salary " during the term for which he was elected ? "

The act of 1871 provides for annual elections to be held on the 2d Tuesday of March, in each year. Section 5 provides for the election, at the annual elections, of the usual city officers, such as assessors, ward clerks, chosen freeholders, commissioners of appeal, constables, overseers of the poor,

&c., to hold office for the term of one year, and until others shall be chosen and legally qualified in their stead. It also provides for the election of a mayor, a receiver of taxes, a recorder, and an alderman from each ward, who shall hold their offices, respectively, for the term of three years, and until others are chosen and qualified in their stead.

By section 18, every person elected or appointed to office in pursuance of the charter was required, before entering upon the duties of his office to take and subscribe an official oath, and certain officers, including the receiver of taxes, were required, before entering upon their duties, to give bond to the city in such sum and with such sureties as the city council should approve.

Section 12 provides that the term of office of all officers elected at the annual election, other than chosen freeholders and justices of the peace, shall commence on the Friday succeeding the day of election each year.

The election of 1886, at which the relator was elected for his present term, was held March 9th, 1886. The succeeding Friday was March 12th. The ordinance increasing the salary was not passed until March 18th.

I am inclined to think that section 12 applies to all city officers, whether elected for one year or three years, especially where the officer is required to give a bond to be approved by the city council, the approval of which would naturally devolve on the city government as it exists after the new election. This question happens to be of no importance, for the ordinance increasing the relator's salary was of a later date than either the city election or the Friday succeeding thereto.

The relator has no standing entitling him to the increase of salary unless he can successfully maintain that the language, "during the term for which he was elected," in the fifth section of the act of 1874, has reference to the time when the relator or his predecessor qualified by giving the official bond and entered upon the duties of the office. In this construction of the statute we do not concur. If the relator's present term did not begin on Friday succeeding the election, it is

subject to that rule of law that where no time is fixed by law for the commencement of an official term, it begins to run either from the date of the election or appointment, or from the time the person chosen is authorized by his own act to assume the duties of his office, and not from the time when he actually enters upon his office. This I understand to be the principle adopted by this court, and the Court of Errors, in *Haight* v. *Love*, 10 *Vroom* 14; *S. C., Id.* 476. In that case, the official whose term of office was under consideration, was appointed collector May 7th, 1872, under the city charter, for the term of one year. On the 24th of March, 1873, by a supplement to the charter, the board of finance and taxation was authorized to appoint a collector, to hold for a term of three years, with a provision that the term of the collector then in office should expire as soon as the collector designated by that act was appointed and qualified. The collector so appointed was required to take an official oath and give bond for the faithful performance of his official duties. The collector in office, when the act of 1873 was passed, was appointed collector under that act April 10th, 1873. He took the oath of office April 14th, and gave bond May 15th. He was re-appointed April 6th, 1876. The board, as it was constituted on the 6th of April, continued until April 12th, 1876, at which date such a change in the members constituting the board occurred that on the 13th of April another person was appointed to the office. If the incumbent's first term expired April 10th, 1876, three years from the date of his appointment, the board, as then constituted, had the power to re-appoint. If, on the other hand, his first term expired May 15th, 1876, three years from the date of giving his preceding official bond, the power of appointment then devolved on the new board, which had made selection of the contestant. The re-appointment of April 6th, 1876, was sustained by the Supreme Court, on the ground that immediately on the prior appointment the appointee might, by his own act, by giving bond and taking the official oath, have legally assumed the duties of the office, and by the Court of Errors on the ground

that under the circumstances his prior official term began at the date of his appointment.

Either aspect of this subject is fatal to the relator's case. The city council, which is the body to approve the relator's bond, was in session March 12th. On that day this body, instead of being called upon to approve the relator's bond, adopted a resolution for an increase of salary, which resolution was embodied in the ordinance of March 18th. The relator, by withholding his bond until April 6th, could not prolong his prior term, and give validity to the ordinance in its application to the new term for which he had been elected. In the case cited Mr. Justice Dixon, in the Supreme Court, and Mr. Justice Van Syckel, in the Court of Errors, commented, in strong language, adversely to the policy of permitting an appointee to extend the legal tenure of his predecessor, or his own prior term by his neglect to qualify.

Nor is the principle above stated impaired or modified by the fact that the statute which created the office provided that the incumbent should hold until his successor qualified. Such a provision was not designed to extend the tenure of office of the incumbent beyond the specified term for his benefit. Its purpose was to conserve the public interests, that there might be no vacancy in office through the delay of the successor to qualify. An incumbent holding the office under such circumstances is in by sufferance of the person who, being chosen to the office, has failed to assume its duties, and the term so protracted is to the detriment of the latter in abridging his own term of office. As against the public, officers cannot found a valid title or right to hold over upon their own neglect of duty, although the charter provides that they should continue in office until their successors should qualify. 1 *Dill. on Mun. Corp.*, § 160; *People* v. *Bartlett*, 6 *Wend.* 422. Especially does this principle apply where the officer is chosen at a popular election, to be held at a certain day, and the duty to compel the officer to qualify devolves upon another body.

*Stilsing* v. *Davis*, 16 *Vroom* 390, does not apply to this case. The question there was with respect to the power of appoint-

ment. The charter of Jersey City vested in the senate and general assembly, in joint meeting, the power to appoint police justices of the city, who should hold office for the precise term of three years. It also made provision for the contingency of a vacancy in the office by authorizing the governor to fill the vacancy until the joint meeting should appoint. By a subsequent statute, it was enacted that any city officer appointed for a precise and determined period should continue to hold his office, and exercise its duties until his successor had been appointed and qualified. Stilsing was duly appointed police justice by the legislature in joint meeting, and, at the expiration of his term of three years, the legislature failed to appoint a successor. This court held that inasmuch as the statute provided that the officer, though appointed for a fixed and determined period, should continue to hold his office until the legislature exercised its power of appointing a successor, there was no vacancy in office ; and, there being no vacancy to be filled, the governor had no power to appoint. In the case in hand there was no prolongation of the relator's preceding term by the inaction of the appointing power. The qualified voters of the city exercised their power to elect, and the question here is whether, the election having been made, the person elected could, by his own act, determine when his term of office should commence. It was not designed, in Stilsing v. Davis, to over-rule Haight v. Love. In the last-named case the statute under which the officer took his title provided for the continuance of the incumbent in office until his successor had qualified, and that circumstance was not considered as controlling the rule adopted.

Nor is *Stuhr* v. *Hoboken*, 18 *Vroom* 147, adverse to the views we have expressed. In that instance the ordinance increasing the salary was passed before the officer was appointed. The court held, under a city charter containing a provision similar to the fifth section of the act of 1874, that the ordinance, having been passed before the appointment was made, was effective to fix the salary, although the ordinance

did not, because of the necessity of publishing it, take effect until after the term began.

Whether the relator's present term began at the time when, by his own act, he could have qualified and assumed the duties of the office, or from the date of his election, or from the Friday succeeding his election, he is equally within the interdict of the fifth section of the supplement of 1874. In either of these events the ordinance of March 18th, 1886, is incapable of effecting an increase of salary for his present term.

The *mandamus* is denied, and the rule to show cause discharged, with costs.