FRANCIS McGUIRE, Jr., AND ROBERT H. DAVIDSON, RE-LATORS, v. DOMINICK DE MURO, DEFENDANT.

Submitted March 22, 1923—Decided July 23, 1923.

1. Under section 1 of the *Quo Warranto* act (*Comp. Stat., p.* 4210) the prosecution by a private person, in the name of the attorney-general, by leave of the Supreme Court, against any person or persons, is limited to cases where a person is usurping, intruding into or unlawfully holding and executing any office or franchise.

2. Prosecutions by private individuals under section 1 of the *Quo Warranto* act are limited to taxpayers and inhabitants, who are thus interested in the matter in controversy.

3. A person who believes himself entitled and makes claim to an office which is held by another, must proceed under section 4 of the *Quo Warranto* act, and not under section 1.

On rule to show cause for leave to file an information in the nature of a writ of *quo warranto*.

Before Justices KALISCH, BLACK and KATZENBACH.

For the rule, *Edward A. Levy* and *Robert H. Davidson*.

*Contra*, *William W. Watson*.

The opinion of the court was delivered by

KALISCH, J. The relators, as citizens of the city of Passaic, apply, under section 1 of an act entitled "An act relating to information in the nature of a *quo warranto*" (3 *Comp. Stat., p.* 4210), for leave of this court to file an information to be exhibited against the defendant, Dominick

De Muro, to show by what right he claims title to the office of clerk of the Passaic District Court.

The defendant was appointed to the office by the judge of said court, by virtue of section 7 of an act concerning District Courts (*Pamph. L.* 1898, *p.* 557), which section was amended in 1899 (*Pamph. L., p.* 552) so as to read as follows:

"The clerks of each district court shall be appointed by the judge thereof, and shall hold office during the pleasure of the judge thereof or until the appointment and qualification of his successor, and such clerk shall be legal custodian of all books, papers, records, seal and all property appertaining to said court." The defendant is in possession and performing the duties of the office.

From the testimony taken on the rule it appears that both relators were veterans of the late war, McGuire having been in the military service of the United States, and Davidson in the naval, and both were honorably discharged. Each had taken and passed the civil service examination, and together, with the defendant, who had been neither in the military nor naval service, were the first three names on the eligible list of the civil service for selection to the position of clerk.

The relators claim that the appointment of the defendant was unlawful, in that it was obligatory on the judge of the District Court, under chapter 52 of the laws of 1922, page 98, to appoint McGuire, a veteran, who had a record of disability incurred in the line of duty in the recent war between the United States and the German Empire, or, if not, to appoint, at least, Davidson, who had been in the naval service, and under the laws of 1920, chapter 298, section 21, was also entitled to be preferred to the defendant.

In short, the contention of the relators is that, notwithstanding the defendant was eligible, in law, for the position to which he was appointed, the judge, however, was limited, by force of the statutes above referred to, to choose either one of the relators in preference to the defendant.

We do not think that the present proceedings properly brings this question before us. The relators are proceeding under section 1 of the *Quo Warranto* act, which limits the

prosecution, by a private person, of an information, in the nature of a *quo warranto* in the name of the attorney-general, with leave of the Supreme Court, against any person or persons, to cases where a person is usurping, intruding into or unlawfully holding and executing any office or franchise.

The legal propriety of the present proceeding is challenged upon the ground that the relators are improperly joined.

We think there may be a joinder of several persons, as relators, when they are not contestants for the office held by the defendant, but whose aim is to serve the public good and convenience. Our reports furnish a precedent where two or more persons had joined, as relators, under section 1 of the *Quo Warranto* act. *Camman & Stryker* v. *Bridge Water Copper Mining Co.*, 12 *N. J. L.* 84. The relators were not contestants for the office. When such is the case, and the sole object sought to be attained is the public good and convenience, there seems to be no good reason why such joinder is improper. In fact, it may be very helpful in bringing about the desired result. But there is a fundamental difficulty in the way of granting the application of the relators, since it nowhere appears in the testimony adduced on the rule that either of the relators is a taxpayer, and it distinctly appears that both are claimants for the same position held by the defendant.

In *State, ex rel. Mitchell,* v. *Tolan,* 33 *N. J. L.* 195, Mr. Justice Depue, speaking for the Supreme Court (at *p.* 198), said:

"The relator is not a contestant for the office of either of the persons named as a defendant. He is a taxpayer and legal voter in the city of New Brunswick. As an inhabitant of the city and subject to its municipal government, he is interested in the due election of the members of the city council. He has therefore sufficient interest to support his right to interpose."

In *Ferry* v. *Williams* (a *mandamus* case), 41 *N. J. L.* 332, Mr. Justice Dixon (at *p.* 339), after having referred to *Mitchell* v. *Tolan, supra,* and other cases of like import, says:

"These cases seem to indicate that with us the exception to the rule is extended so far as to justify this court in acting by *mandamus, certiorari* or *quo warranto,* at the instance of private persons, for the redress or prosecution of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be served by the remedy desired. * * * The present controversy relates to a matter of public policy of universally recognized importance, concerning a traffic which, in the opinion of many, largely adds to the disorders of society and the burdens of taxation." * * * "Hence, I think the relator, in his capacity of inhabitant and taxpayer in the city of Orange, has such an interest in the proper observance of the provisions of the city charter for licensing saloons, that he may, under certain circumstances, litigate for its protection." * * *

In *Oliver* v. *Jersey City* (a *certiorari* case), 63 *N. J. L.* 96, the prosecutor was a resident and taxpayer, and this case furnishes cogent confirmation of the inflexible rule of practice that in order for a person to be qualified to call into question the legality of the acts of a public body or official relating to the public service and convenience by *certiorari, mandamus* or *quo warranto,* such person must not only be a resident but also a taxpayer. This case was reversed by the Court of Errors and Appeals on grounds not affecting or disturbing the doctrine enunciated therein as to the necessary status of a prosecutor or relator. See 63 *Id.* 635.

In *Hann* v. *Bedell,* 67 *N. J. L.* 148, Chief Justice Gummere (at *p.* 150), says:

"As a taxpayer and inhabitant of the city, subject to its municipal government, he is interested in the due selection of its officers, and is entitled to interpose by information in the nature of a *quo warranto* when such officers have been illegally selected. *State, ex rel. Mitchell,* v. *Tolan,* 33 *N. J. L.* 195, 199."

In *Holloway* v. *Dickinson,* 69 *N. J. L.* 73, Mr. Justice Pitney, who delivered the opinion of the court, says:

"This information was filed in the name of the attorney-general at the relation of a resident and property owner acting under leave of the court."

There is a further legal obstacle to the granting of leave to the relators to file an information, since it appears that both are claiming title to the position held by the incumbent, whereas section 1, on which the application for leave is based applies only to cases where the relator, as a taxpayer and resident, seeks to conserve the public good and convenience.

In *State, ex rel. Davis,* v. *Davis et al.,* 57 *N. J. L.* 203, decided by this court in 1894, section 4 of the present *Quo Warranto* act was section 1 of the statute of 1884 and became by the revision of 1903 (*Pamph. L., p.* 377; *Comp. Stat., p.* 4212), section 4 of the *Quo Warranto* act as it now is. Section 1 of the act remained as it originally was and was not construed in the case just cited, and attention to that fact is drawn, in order to prevent misapprehension as to what section of the present *Quo Warranto* act that eminent jurist, Chief Justice Beasley, was referring, when (at *p.* 204) he said:

"It is true that the present action has been taken in accordance with the supplement to the *Quo Warranto* act passed in 1884 (*Rev. Supp., p.* 319, ¶ 1), but that modification of the method of procedure has not altered the law in the respect now in question."

He there held that under that section the defendant's title was only put in issue. This led to legislation in the following year by which it was enacted that in all actions of *quo warranto* this court may, if the writ, return, and pleadings are properly formed for the purpose determine, by its judgment, not only the title of the respondent to the office or franchise in question, but also the title of the relator or relators to the same office or franchise. *Pamph. L.* 1895, *p.* 82. At the same session of the legislature the remedy was further amplified. *Pamph. L.* 1895, *p.* 344.

In discussing a similar phase of the act, as here, Mr. Justice Parker, in *Anderson* v. *Myers*, *77 N. J. L.* (at *p.* 187), in speaking of the scope of section 4 said that it "permits any citizen of this state, believing himself entitled to a municipal office or franchise, to file as relator an information in the nature of a *quo warranto* against an alleged intruder and without obtaining the leave of this court to file such information in the name of the attorney-general as was formerly necessary and still is necessary when the relator is not the claimant."

The later legislation of 1895, which amplified the remedy in actions of *quo warranto*, did not affect or alter the legal rule pronounced by our courts in relation to the necessary status of a person asking leave to file an information under section 1.

As has been pointed out, before granting leave to an applicant under section 1, it must be made to appear that he is a taxpayer and an inhabitant and that he is not the claimant. Under section 4 a person who believes himself entitled to an office, whether he is a taxpayer or not may, without leave of the court, file an information against an alleged usurper or intruder.

Thus, the relators are not without a remedy, as both lay claim to the same position held by the defendant, their proper course is to proceed against the alleged unlawful holder of the position under section 4.

The rule to show cause is discharged