JOSEPH MORGAN, PROSECUTOR, v. MAYOR AND COUNCIL OF THE BOROUGH OF ROSELLE PARK AND THE LOCAL ASSISTANCE BOARD OF THE BOROUGH OF ROSELLE PARK, DEFENDANTS.

Submitted May 5, 1942—Decided November 10, 1942.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Nicholas A. Tomasulo* (*Maurice A. Scotch,* of counsel).

For the defendant, *Joseph A. Lettieri.*

The opinion of the court was delivered by

HEHER, J. Prosecutor maintains that on July 16th, 1940, he was illegally removed from the office of director of welfare of the Borough of Roselle Park. The challenged action was in form a "permanent suspension" by the Local Assistance Board (organized under *R. S.* 1937, 44:8-1, *et seq.,* as amended by chapter 123 of the laws of 1938) on specific charges of "insubordination," and the appointment of another as a "new and permanent Relief Administrator" in his place and stead. It is conceded that the latter assumed immediate possession of the office.

Prosecutor refused to plead to the charges so preferred and to interpose a defense, on the grounds that the board was "illegally constituted" and was not, moreover, invested by the statute with power to hear and determine the charges, and the proceeding was therefore *coram non judice.*

Under an act which became effective on June 18th, 1940, the supervisory authority granted to the State Financial Assistance Commission by the former-mentioned statute was transferred to the Director of Municipal Aid of the State Municipal Aid Commission; and the provisions placing the burden of such financial assistance upon the municipalities, and creating a local assistance board and a municipal director of welfare, were substantially re-enacted. *Pamph. L.* 1940, *p.* 277. By a subsequent enactment, effective July 8th, 1940, chapter 8 of Title 44 of the Revision of 1937 was repealed in its entirety. Thereby the State Financial Assistance Commission and "the office of Director of Financial Assistance and all other offices, positions and employments of said commission" were abolished, and "all the powers and duties" of that commission were vested in the State Municipal Aid Administration "for the purpose of completing all matters now pending and incompleted before" the Commission. *Pamph. L.* 1940, *p.* 549. There is no contention that the enactment of these statutes terminated the local assistance board or the office of municipal director of welfare. The writ of *certiorari* herein was allowed on August 19th, 1940.

It is urged, *in limine,* that the welfare directorship is an office in legal intendment, and that prosecutor misconceived the remedy since he was not the incumbent.

The place takes the category of an office. It is a creature of the legislature to which certain, permanent duties are assigned. The legislature has declared it to be the "public policy" of the state that "public assistance" be rendered to indigent persons while within its confines; and the provision thereof is made the obligation of the municipalities. Local assistance boards are founded for the administration of the law. The director of welfare is constituted the "chief executive and administrative officer;" and his duties are delineated in the act. He is invested with the authority to "render such aid and material assistance as he may in his discretion, after reasonable inquiry, deem necessary" to serve the statutory policy. He is charged with the continuing duty of periodic investigations and visitations of persons receiving such assistance, and of taking such action as the circumstances warrant, including the devising of ways and means "for bringing persons unable to maintain themselves to self-support or to the support of any other person or agency able and willing to do so." *R. S.* 1937, 44:8-1, as amended; 44:8-7, *et seq.,* as amended; chapter 130 of the laws of 1940, *supra.* He is clothed with sovereign functions of government for an end that is public; and thus he holds an office within the concept of the law. *Fredericks* v. *Board of Health,* 82 *N. J. L.* 200; *McGrath* v. *Bayonne,* 85 *Id.* 188.

And it is the settled rule that the possessor's title to an office is triable only by a writ in the nature of *quo warranto.* One in possession of an office may be adjudged guilty of usurpation only by means of this writ. The incumbent may invoke *certiorari* to test the validity of a proceeding which he apprehends may be used unlawfully to oust him from possession; but the validity of his title may not be determined in that proceeding. *Bradshaw* v. *City Council of Camden,* 39 *N. J. L.* 416; *Haines* v. *Freeholders of Camden,* 47 *Id.* 454; *Loper* v. *City of Millville,* 53 *Id.* 362; *Roberson* v. *City of Bayonne,* 58 *Id.* 325; *State* v. *Freeholders of*

*Hudson,* 60 *Id.* 362; *Bilderback* v. *Freeholders of Salem,* 63 *Id.* 55; *Loughran* v. *Jersey City,* 86 *Id.* 442; *Moore* v. *Borough of Bradley Beach,* 87 *Id.* 391; *Murphy* v. *Freeholders of Hudson County,* 92 *Id.* 244; *Hartley* v. *Board of Elections,* 93 *Id.* 313; *O'Neill* v. *Bayonne,* 99 *Id.* 430; *DiMona* v. *Mariano,* 123 *Id.* 75; *Stevenson* v. *Bridgeton,* 123 *Id.* 219.

But, since the term for which prosecutor was appointed has expired, he does not now have the status prescribed by *R. S.* 1937, 2:84-7, for one who would file an information in the nature of *quo warranto* against a person usurping a municipal office. In a proceeding under that section of the statute, the relator may have judgment only upon the strength of his own title, and not upon any infirmity or weakness in the defendant's title. It is incumbent upon him to show that he has legal title to the office. *Manahan* v. *Watts,* 64 *N. J. L.* 465; *Dunham* v. *Bright,* 85 *Id.* 391; *Florey* v. *Lanning,* 90 *Id.* 12; *McCarthy* v. *Walter,* 108 *Id.* 282. Of course, this principle is inapplicable where leave is given by the court to exhibit an information in the name of the Attorney-General under *section* 2:84-1.

Moreover, prosecutor was an officer *de facto* merely, and as such he is not entitled to have the proceedings set aside either in *quo warranto* or on *certiorari*. Under chapter 123 of the laws of 1938, *supra,* it was requisite that the local assistance board be constituted by appropriate action of the local legislative body. The provision therefor is not self-executing. It was ordained that the board be composed of not less than three nor more than five persons, to be appointed by the chief executive officer of the municipality "upon approval of the governing body;" that the members of the board should hold office "for such term as may be provided by the governing body," and that vacancies should be filled for the unexpired term only. The board so organized was enjoined to appoint a director of welfare and to fix the salary of that officer subject to the "approval" of the governing body. The constitution of the board, particularly as regards its membership and the fixation of the terms, was a govern-

mental function laid upon the municipality as an agency of the state—a specially delegated power to be exercised in the established mode for the public welfare, according to its discretion. *Vide, Hale* v. *Town of Kearny*, 99 *N. J. L.* 334; *Green* v. *City of Cape May*, 41 *Id.* 45; *Brady* v. *Bayonne*, 57 *Id.* 379; *Stemmler* v. *Madison*, 82 *Id.* 596; *Public Service Railway Co.* v. *Camden*, 95 *Id.* 190.

The requisite municipal action was not taken here. On August 29th, 1938, the mayor alone undertook to exercise the power thus delegated to the governing body by appointing three residents of the municipality as members of the "Local Assistance Board" for the term of one year. These "appointments" were "confirmed" by the Council on a "roll call." On October 15th, 1938, the board so chosen organized and appointed prosecutor "Relief Administrator for one year" at a prescribed salary. On December 15th, 1938, the mayor advised the council at an adjourned meeting that, in fulfillment of his original but unexpected intention, he had "reappointed" the respective members of the board for one, two- and three year terms; and the council, on "roll call," "confirmed" the appointments thus made. At the next annual meeting of the board, held on October 14th, 1939, prosecutor was reappointed as "Relief Administrator" for the term of two years, at the same salary. On January 26th, 1940, the governing body adopted a resolution abolishing the Local Assistance Board "in the interest of economy," and vesting the duties theretofore performed by the local relief administrator in the overseer of the poor, under the superintendency of the governing body. That resolution was vacated by this court on *certiorari* on the ground. we are informed by counsel in the briefs (the reason is not of record), that the implementing of the statutory provision for the creation of a local assistance board was the imperative duty of the governing body. Thereafter, on April 12th, 1940, the local governing body, by resolution, "created and constituted" a local assistance board composed of five members, appointed for terms so arranged that the term of one member would expire at the end of each calendar year.

Thus the board originally designated was but a *de facto* body; and it is the law of this state that the appointee of a *de facto* body is not invested with a *de jure* title. *von Neida* v. *Bennett*, 117 *N. J. L.* 231. And, since he did not have legal title to the office, prosecutor cannot complain of his ouster, no matter what the ground upon which it was rested. *Florey* v. *Lanning, supra.*

Writ dismissed, without costs.