NEILS JACOBSEN, RELATOR, v. EUGENE GARDELLA, DEFENDANT.

Decided June 20, 1944.

For the relator, *Ward Kremer.*

For the defendant, *John M. Pillsbury* and *Haydn Proctor.*

KINKEAD, C. C. J.   The relator, proceeding by *quo warranto* under *R. S.* 2:84–7, challenges the right of the defend-

ant to hold the office of borough councilman of the Borough of Sea Bright, New Jersey, and seeks to have him ousted from the same on the ground that defendant was a non-resident of Sea Bright at the time of his election to the post in 1941, or that the defendant, since assuming the office, has ceased to be a resident of said borough.

At the primary election held in Sea Bright in September, 1941, the defendant was nominated as the Republican candidate for the office of councilman in Sea Bright, and the relator was nominated by the Democratic party for that office. At the general election which was held on November 4th, 1941, the defendant received a total of 288 votes as against 281 votes for the relator.

The two statutes on which the relator bases his right to a judgment of ouster are *R. S.* 40:11–1 and *R. S.* 40:46–14; *N. J. S. A.* 40:11–1 and *N. J. S. A.* 40:46–14:

*R. S.* 40:11–1 provides that: "* * * every person holding an office, the authority and duties of which relate to a * * * municipality, shall reside within the municipality."

*R. S.* 40:46–14 provides that: "Whenever an officer of a municipality shall cease to be a *bona fide* resident therein, * * * a vacancy in his office shall immediately exist, and he shall not exercise any of the duties of the office theretofore held by him. * * *"

The facts in the case are undisputed. Prior to the year 1937, the defendant lived for several years in Rumson. The defendant became married to his present wife on November 7th, 1937, and after their marriage, they and a daughter of the defendant by a former marriage lived in an apartment on Center Street in Sea Bright, residing there until April, 1938, when the family moved into an apartment on Ocean Avenue and New Street, Sea Bright. In the fall of 1938, around Thanksgiving Day, the Gardella family moved from Sea Bright to Rumson. They went to live in a residence there on Hartshorne Lane which had been owned by the defendant for several years previously.

The Rumson house is a pretentious home, having cost approximately $18,000. It has nine rooms and a two-car garage, and a frontage of approximately 200 feet. In addi-

tion to the furnishings already in the home, the defendant bought for the same two bedroom sets and rugs, chairs, lamps, chinaware and other household articles.

The Gardella family lived at Rumson through the winter of 1938-1939, and in the spring of 1939, the defendant rented his Rumson home to a summer resident. At that time, he furnished and remodeled an apartment at Ocean Avenue and Church Street, Sea Bright, and moved into it, staying there until approximately October 1st, 1939, when he returned to his Rumson home with his family. He continued to live at the Rumson home throughout the remainder of 1939, the entire year of 1940, the entire year of 1941, and up until May 1st, 1942. So that, from October, 1939, to May, 1942, the Gardella family resided continuously at Rumson for a period of two years and seven months. The defendant, himself, during the summer of 1941 slept several nights in the Sea Bright apartment at a time when his wife and child were away in Maine, but at no time during said period of two years and seven months, did the Gardella family as a family have any residence in the Sea Bright apartment.

The defendant and his family occupied the Sea Bright apartment during the summer of 1942 for a period of about four months, after which they returned to Rumson. Since October 1st, 1942, down to the time of the trial of this case in the latter part of last April, neither the defendant nor his family have resided in Sea Bright, but during said period of time, have continuously resided at defendant's Rumson home. In other words, during the sixty-five months which elapsed from November, 1938, to April, 1944, the defendant and his family resided eight months in Sea Bright and fifty-seven months in Rumson.

In addition to the statutory requirement in *R. S.* 40:11–1; *N. J. S. A.* 40:11–1, that an office holder of a municipality must reside within the municipality, *R. S.* 19:23–15; *N. J. S. A.* 19:23–15, provides that a candidate for public office *must certify that he is a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made.* The form of acceptance to be signed by the candidate is in part as follows:

"I am a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made." (All italics supplied.)

This form of acceptance is found in the pamphlet issued by the Secretary of State entitled "Title 19 Elections" (1943) at page 209.

From the foregoing, it can be ascertained that it is requisite to determine whether or not the defendant can be considered to be a legal voter of Sea Bright. Was he a legal Sea Bright voter on November 4th, 1941? Can he now be regarded as a legal voter in that borough when neither he nor his family have lived in the same since October 1st, 1942?

R. S. 19:4–1; N. J. S. A. 19:4–1 provides that a voter shall be entitled to vote in the polling place assigned to the election district in which he *actually resides* and not elsewhere. (Italics supplied.)

The words "actually resides" in the statute mean that the voter is only entitled to vote from an address where he physically lodges and dwells. A voter loses his right to vote in a municipality when he abandons physical residence in that municipality, despite the fact that he continues to maintain an apartment or other habitable place of abode in the same. *In re McCarthy*, 18 *N. J. Mis. R. 5*; 10 *Atl. Rep.* (*2d*) 142.

Furthermore, a voter cannot actually reside in one place, but claim the right to vote in another, on the ground that he constitutes the latter place as his voting residence. A mere declaration by a voter that an address is his voting residence, unaccompanied by any act of dwelling or lodging there on his part, is not a compliance by him with the requirements of the statute. To vote from an address, a voter, if his right to vote is challenged, must be prepared to prove that his voting address is his *bona fide* place of abode, and that he actually resides, lodges and dwells in the same.

Circuit Court Judge Brown in *In re McCarthy, supra,* construed R. S. 19:4–1; N. J. S. A. 19:4–1, and with great clarity distinguished an actual residence from an alleged voting residence. In his comprehensive opinion which has become the settled law of this state, Judge Brown, 18 *N. J. Mis. R.* (at p. 14) 10 *Atl. Rep.* (*2d*) (at p. 146), held:

"It is not sufficient to comply with the statute on this qualification to merely designate an address as a voting residence, the law requires that the residence of the voter must be real, actual and positive. To be a 'voting residence' there must be not only the intention of having the address for the purposes of voting but that intention must be accompanied by acts of living, dwelling, lodging or residing sufficient to reasonably establish that it is the real and actual residence of the voter. If the term 'voting residence' fulfills those qualifications then it may be said to be a voting residence. If by voting residence is meant that a voter simply declares that a certain residence is his voting residence and there appears no outward act of living, dwelling, lodging or making the place his actual residence then such 'voting residence' does not fulfill the requirements of the law and a person voting in an election district where such 'voting residence' is situate cannot legally cast a vote in that district. The voter must not only have the intent of designating a place as his or her residence but such expression of intention must be accompanied by acts in furtherance of that intention and those acts should be actual. The best and most trustworthy evidence of a voter's residence, as a general rule, are his acts rather than his declarations concerning his residence. It is difficult to set a hard and fast rule as to what constitutes actual residence and each case that arises may require individual consideration, but this much is certain that the voter must not only exercise an intention of having a place as his residence but that intention must be accompanied and fortified by actual and real acts of residing at the intended residence. A man may have more than one residence; he may live in one place during the summer and another in the winter but as far as voting qualifications required by the State of New Jersey are concerned he can vote only from the place where he *actually resides* in the State of New Jersey *and not elsewhere*."

One who is barred from voting in a municipality by reason of lack of residence therein, is disqualified with equal force from holding public office in that municipality. A municipality cannot lawfully elect to a public office a candidate who is not eligible to vote in that municipality, by virtue of non-

residence. The election of such a candidate would be in direct violation of *R. S.* 40:11–1; *N. J. S. A.* 40:11–1.

Furthermore, if at any time after his election to office, an officeholder of a municipality ceases to have that quality of residence therein, which would entitle him to be considered a legal voter of said municipality, then said officeholder is disqualified from continuing to hold office therein, and a vacancy in his office immediately exists as provided by *R. S.* 40:46–14; *N. J. S. A.* 40:46–14.

The defendant and his wife are both people of a splendid standard of citizenship. Neither of them swerved nor deviated from the truth in an effort to win the case, but each frankly admitted their lack of residence in Sea Bright for the periods which have been specified.

The defendant is connected with the largest business enterprise in Sea Bright. Gardella's Market is widely known in the northeastern section of Monmouth County and does a gross business of approximately $200,000 per year. In addition, the defendant owns three pieces of property in Sea Bright and has a total investment interest in that borough of between $60,000 and $70,000.

The fact that the citizens of Sea Bright desire to have an officeholder of the defendant's integrity, ability and substance, is indicated by his re-nomination for councilman at the Republican party primary held in May, 1944.

However, despite his many qualifications, the defendant is barred from holding public office in Sea Bright by his non-residence there. It has been frankly conceded by his counsel, that the defendant is disqualified as a Sea Bright officeholder, if he is disqualified from voting there. He is disqualified as a Sea Bright voter, because the mere maintenance by him of an apartment or other habitable place of abode there is an insufficient compliance with the requirements of *R. S.* 19:4–1; *N. J. S. A.* 19:4–1.

It is the finding of the court that the defendant was not a legal resident of Sea Bright at the time of his election as a borough councilman on November 4th, 1941. Furthermore, if he had been a legal resident there in November, 1941, he would have ceased to have that status from October 1st, 1942,

from which date down to the present he has lived continuously and exclusively at his Rumson home.

Therefore the court renders a judgment of ouster against the defendant, and in favor of the relator, and in accordance with *R. S.* 2:84–15; *N. J. S. A.* 2:84–15, counsel for the relator may submit an appropriate order for the court's signature.