83 N.J. Super. 526 (1964)
200 A.2d 522
LORETTA HAACK, PLAINTIFF,
v.
RUDOLPH RANIERI, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 20, 1964.
*529 Mr. John J. Sheehy argued the cause for plaintiff (Messrs. Rooney, Peduto & Sheehy, attorneys for plaintiff).
Mr. Nicholas S. Schloeder argued the cause for defendant.
ARTASERSE, A.J.S.C.
This is a proceeding in lieu of prerogative writs instituted by plaintiff Loretta Haack seeking to oust defendant Rudolph Ranieri as councilman from the first ward of the City of Hoboken and to be granted said office herself for the reasons hereinafter set forth.
The parties have stipulated that the depositions, interrogatories, affidavits and other exhibits filed in this matter be considered in lieu of other testimony. Both parties have rested their cases.
On May 14, 1963 defendant defeated plaintiff and the incumbent councilwoman, Loretta Haack, in the councilmanic elections in the first ward of Hoboken. That election was never contested under N.J.S.A. 19:29-1 et seq. Ranieri assumed office on July 1, 1963 and has acted as councilman from the first ward until the present time.
This proceeding was brought by Mrs. Haack in November 1963, more than six months after the election. The complaint *530 alleges that Ranieri, prior to February of 1963, improperly registered as a resident of 129 Washington Street, Hoboken, New Jersey, when in fact he actually resided at 16 Bond Place, Weehawken, New Jersey. Plaintiff contends that any transfer in registration based upon the improper initial registration is defective, which defect renders defendant ineligible for office. Plaintiff further alleges that from February 1963 until after the election defendant never acquired an actual domicile in Hoboken, although he purported to live at 100 Bloomfield Street, Hoboken.
Defendant, on the other hand, contends that he was continuously a legal resident of Hoboken from 1952 to the present time, residing at 129 Washington Street, Hoboken, from September 1952 until January 1963, when he moved to 100 Bloomfield Street in that city. In late June 1963 he moved into his present residence at 226 Hudson Street, Hoboken. Defendant further contends that even if the court finds he was not a legal resident of 129 Washington Street, his registration at 100 Bloomfield Street is, nevertheless, valid. He also contends that plaintiff is barred by the time limitations of R.R. 4:88-15 and by laches. He asserts, moreover, that plaintiff cannot show title to the office in herself and is thus without standing to bring the action under N.J.S. 2A:66-8. He predicates his attack on plaintiff's title to the office on the fact that she did not receive a plurality of the votes cast and that she abandoned any claim as a holdover officer when she surrendered the office to him without protest.

I. STANDING OF THE PLAINTIFF TO BRING THIS ACTION
There are two sections which govern proceedings in lieu of the former prerogative writ of quo warranto. N.J.S. 2A:66-6 gives the right to bring the action to anybody who under the former practice would have had the requisite interest to exhibit an information in the nature of a quo warranto with leave of the court. This section now allows the bringing of an action as of right and dispenses with the allocatur formerly *531 required from the court. N.J.S. 2A:66-8 allows a de jure claimant to an office to bring an action to oust a usurper. This, concededly, is the section under which Mrs. Haack is proceeding.
The distinction between the two sections can be grasped from the discussion of their predecessor statutes (R.S. 2:84-1, R.S. 2:84-7) in McGuire v. DeMuro, 98 N.J.L. 684 (Sup. Ct. 1923), and in the State ex rel. Williams v. Godfrey, 11 N.J. Misc. 283, 165 A. 724 (Sup. Ct. 1933).
In the recent case of Demoura v. Newark, 74 N.J. Super. 49 (App. Div. 1962), the court held that a proceeding in the nature of quo warranto involving a municipal office or position must, under the former practice as well as now, be brought by a citizen and taxpayer of the city, unless he himself is a claimant to the office.
Mrs. Haack does not contend to represent the public, but she does claim title to the office held by defendant. Plaintiff, under N.J.S. 2A:66-8, must show title in herself before the court in this action can properly inquire by what authority defendant holds office, and plaintiff's failure to show such title is fatal to the action. Manahan v. Watts, 64 N.J.L. 465 (Sup. Ct. 1900); Florey v. Lanning, 90 N.J.L. 12 (Sup. Ct. 1917); McCarthy v. Walter, 108 N.J.L. 282 (E. & A. 1931); Toomey v. McCaffrey, 116 N.J.L. 364 (Sup. Ct. 1936); Murphy v. Cuddy, 121 N.J.L. 209 (Sup. Ct. 1938); McGlynn v. Grosso, 114 N.J.L. 540 (Sup. Ct. 1935); Colton v. Kreutzinger, 116 N.J.L. 456 (Sup. Ct. 1936), affirmed 118 N.J.L. 183 (E. & A. 1937); Devlin v. Cooper, 124 N.J.L. 155 (Sup. Ct. 1940), affirmed 125 N.J.L. 414 (E. & A. 1940); Morgan v. Mayor and Council of Borough of Roselle Park, 129 N.J.L. 233 (Sup. Ct. 1942).
There is some authority to the contrary, holding that such a proceeding has a duel aspect and that the public interest could require a judgment of ouster where neither the relator nor the respondent was entitled to the office. Hawkins v. Cook, 62 N.J.L. 84 (Sup. Ct. 1898); Anderson v. Myers, *532 77 N.J.L. 186 (Sup. Ct. 1908); Bullock v. Biggs, 78 N.J.L. 63 (Sup. Ct. 1909); Dunham v. Bright, 85 N.J.L. 391 (Sup. Ct. 1914); Bonynge v. Frank, 89 N.J.L. 239 (E. & A. 1916).
However, this court is convinced that the correct rule requires that plaintiff show title in herself as a necessary condition precedent. This is borne out by recent decisions of our court. In Burke v. Kenny, 9 N.J. Super. 160 (App. Div. 1950), the court said:
"There are certain features of this case which prompt us to state preliminarily that although prerogative writs have been superseded and a simplified procedure has been adopted `in lieu thereof' (Rule 3:81-1), yet in an action, such as this, prosecuted under the authority of R.S. 2:84-7, N.J.S.A., the plaintiff alleging himself to be lawfully entitled to the office must assume the burden of proving his right to the office and the validity of his own title to it. The weakness or invalidity of the title of the incumbent does not supply any strength to the plaintiff's cause of action." (at p. 163)
See also Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952), by Mr. Justice (then Judge) Proctor, to the same effect. A comprehensive development of our quo warranto statutes can be found in 6 Newark L. Rev. 163 (1941).
Mrs. Haack claims title to the office on two theories: (a) as the qualified candidate with the next highest number of votes to those cast for the allegedly ineligible defendant, and (b) as a holdover officer whose successor allegedly never qualified.

(a) Plaintiff's claim as a minority candidate

The first ground of Mrs. Haack's claim is untenable. In an early but nevertheless well-reasoned opinion in Chandler v. Wartman, 6 N.J.L.J. 301 (Cir. Ct. 1883), the court held that a minority candidate is not elected, whether his opponent be eligible or not. That was an election contest wherein the plaintiff claimed that defendant Wartman, who received the highest number of votes, was ineligible at the *533 time of the election because of lack of citizenship. The court found that defendant was eligible, but it held, further, that even if plaintiff were correct in his assertions, the court could not declare him elected since he did not have the highest number of votes. This opinion is in keeping with the majority rule in other jurisdictions. The rule is set forth in Annotation, "Elections  Dead or Disqualified Candidates," 133 A.L.R. 319, 320-321, as follows:
"The general rule is that votes cast for a deceased, disqualified, or ineligible person, although ineffective to elect such a person to office are not to be treated as void or thrown away, but are to be counted in determining the result of the election as regards the other candidates * * *.
* * * The result of its application in such cases is to render the election nugatory, and to prevent the election of the person receiving the next highest number of votes."
The rationale of this rule is further set out in the annotation at page 323, quoting from the case of Saunders v. Haynes, 13 Cal. 145 (Sup. Ct. 1859):
"An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is next to him on the list of candidates does not receive a plurality of the votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but there is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject."
New Jersey courts have used this approach in interpreting other election statutes. In Rose v. Parker, 91 N.J.L. 84 (Sup. Ct. 1917), the relator was defeated in a primary election *534 for party nomination for sheriff. The successful nominee died in the interim before the general election and the relator sought to be put on the ballot by petition. The court held that the Election Act, section 53, as amended by L. 1915, page 155, prohibiting on the official ballot at the general election, the name of any person nominated by petition who failed of primary nomination, applies even where the successful candidate at the primary dies or declines nomination before the general election.
More recently the Appellate Division cited the general rule set forth in the 133 A.L.R. 320 annotation as support for its decision in McCarthy v. Reichenstein, 50 N.J. Super. 501 (App. Div. 1958). The court was called upon to interpret the run-off provision in the Faulkner Act, which provides for a run-off election between the highest two candidates where no one received a majority in the original election. The second highest candidate died before the run-off election, and the third highest candidate sought mandamus to have his name placed on the ballot. The court held he was not entitled to this and applied the majority rule, with the result that the highest candidate ran on the ballot against the dead man. The Legislature has since changed the statute to prevent this contingency in future run-off elections. See N.J.S.A. 40:69A-161 as amended in 1960.
Therefore, plaintiff, whose candidacy was rejected by a majority of the electorate, has no claim to the office as the next highest candidate even if defendant is ineligible.

(b) Claim as a holdover officer

Whether or not Mrs. Haack can claim office as a holdover, if this court rules Ranieri ineligible, will depend upon the interpretation given to N.J.S.A. 40:69A-152, which reads as follows:
"Every municipal officer elected under any of the plans provided in this act shall serve for the term of office specified in the plan and until his successor is elected and qualified." (Emphasis added)
*535 There are no cases interpreting this statute, and a search of its legislative history has proved equally futile. R.S. 40:87-9 contains a similar provision. In Kuberski v. Haussermann, 113 N.J.L. 162 (Sup. Ct. 1934), there were two council positions open for election. One candidate, Kuberski, qualified; but Haussermann, one of the incumbents, and another candidate received a tie vote. The court, discussing the holdover provision of R.S. 40:87-9, held that Haussermann could not claim to hold over since he could not assert that Kuberski was not his successor. The court stated the purpose of R.S. 40:87-9 as follows:
"* * * The object and policy of the statute are clearly to guard against actual vacancies in the councilmanic body and a construction is required that will effectuate, and not thwart, the legislative purpose." (at p. 166)
The purpose of holdover provisions was also enunciated in the early case of Rightmire v. Camden, 50 N.J.L. 43 (Sup. Ct. 1887), where the court said:
"* * * Such a provision was not designed to extend the tenure of office of the incumbent beyond the specified term for his benefit. Its purpose was to conserve the public interest, that there might be no vacancy in office through the delay of the successor to qualify." (at p. 48)
Thus in 3 McQuillin, Municipal Corporations (3d ed.) § 12.110, page 407, the rule is stated that:
"* * * Where the person receiving the highest number of votes for an office is ineligible, it has been said that the incumbent, unless he abandons the office, holds over until another is elected and qualified." (Emphasis added)
It can be seen that the key to the interpretation of the holdover provision in this case hinges upon whether Mrs. Haack's actions constituted an abandonment of her right to the office. Mrs. Haack surrendered her office to the plaintiff on July 1, 1963; she ceased to function as a councilwoman in *536 Hoboken; she made no demand upon the defendant for the office until this suit was filed in November 1963.
Do such acts constitute an abandonment of any claim as a holdover incumbent? The doctrine of abandonment of a public office is set forth in 67 C.J.S. Officers § 56c, pp. 231-232, in this language:
"While acquiescence may be entirely different from abandonment, the abandonment of a public office may result from * * * the voluntary surrender of an office to another because of the erroneous belief that such other has been duly elected as successor to the surrendering officer * * *. In determining whether there has been an abandonment by acquiescence in a wrongful removal or discharge, each case depends on the particular facts involved. In order to constitute such an abandonment, the officer must intend to relinquish the office. Acts done under coercion cannot be held to constitute an abandonment of office, and it is not necessary for the officer to resort to a forcible collision with those preventing him from exercising the duties of the office in order to preserve his rights, nor will failure on the part of a superseded incumbent to keep up a clamor for reinstatement or to take legal proceedings therefor necessarily work an abandonment. So one who is in possession of an office, and is apparently defeated for reelection, still claiming his right to the office by virtue of a hold-over provision, and having and expressing a willingness to perform its duties, may surrender the office peaceably to one having the certificate of election without incurring a conclusive charge of abandonment * * *." (Emphasis added)
The facts in this case show that Mrs. Haack never claimed the office, nor expressed a willingness to continue in office until the institution of this suit, more than three months after her successor took office. This court determines that her relinquishment of the office on July 1, 1963 was voluntary, absolute and intentional.
The two leading cases which have established this rule of abandonment of any holdover claim are Rainwater v. State ex rel. Strickland, 237 Ala. 482, 187 So. 484, 121 A.L.R. 981 (Sup. Ct. 1939), and State ex rel. Flynn v. Ellis, 110 Mont. 43, 98 P.2d 879 (Sup. Ct. 1940). In Rainwater the relators sought to oust the respondents who had defeated them in an election for aldermen, on the ground that the election was not held on the proper day, thus entitling them to the *537 office as holdovers. In addition to holding that the election was valid, the court held that the relators had abandoned any right to the office as holdovers. The court reasoned thus:
"`The abandonment of an office may be indicated by the action of the incumbent in voluntarily surrendering it to another under a mistaken belief that the latter has been elected as his rightful successor.' * * *
And if the incumbent, after competing with an opponent as a candidate in an election, is defeated, and by official action recognizes the election of his opponent and surrenders the office to him, he, as a matter of law, abandons the office and is estopped to invoke the court's jurisdiction to inquire into the validity of such election, either to oust his opponent or to have himself reinstated in the office." (187 So., at p. 488)
State ex rel. Flynn v. Ellis, supra, is even more poignantly phrased against the position asserted by Mrs. Haack. In that suit the relator was a school superintendent. She was defeated in a bid for nomination for re-election in the July 1938 primary by defendant, who was elected at the general election in November 1938. Defendant took office on January 3, 1939. The relator did not contest the general election and surrendered her office to defendant and took a job as a teacher. Subsequently, on February 23, 1939, the relator sought to oust defendant by quo warranto on the grounds that defendant never qualified because she did not have the requisite teacher's certificate. The court held that there had been an abandonment, reasoning as did the Alabama court in Rainwater v. State ex rel. Strickland, supra. The court also made this very pertinent statement:
"* * * The respondent contends that had she known that the appellant did not possess the requisite qualifications she would not have abandoned the office to her. We believe this avails the respondent nothing as a justification. The provisions of the law for hold-overs are for the benefit of the office and not the officeholder. We observe, however, that although the respondent was defeated in the July primary election and was not a candidate in the November election, she made no serious effort to discover the facts of appellant's lack of qualifications until long after the appellant had commenced her term of office." (98 P.2d, at p. 881)
*538 It should be noted, however, that in State ex rel. Flynn v. Ellis, supra, although plaintiff was not granted the office sought, defendant was nevertheless removed from office in accordance with the law of Montana. See Point I, supra, for the law in New Jersey in similar situations.
See, also, on this same thesis of abandonment, Annotation, 113 Am. St. Rep. 518; People ex rel. Hardacre v. Davidson, 2 Cal. App. 96, 83 P. 159 (App. Ct. 1905); People ex rel. McGarvey v. Hartwell, 67 Cal. 11, 6 P. 873 (App. Ct. 1885); Thompson v. Nichols, 208 Ga. 147, 65 S.E.2d 603 (Sup. Ct. 1951); and Walter v. Adams, 110 Cal. App.2d 484, 243 P.2d 21 (App. Ct. 1952).
Plaintiff relies upon Jacobsen v. Gardella, 22 N.J. Misc. 277, 38 A.2d 126 (Sup. Ct. 1944), wherein a defeated candidate sued as a claimant to the office three years after the election, on the dual grounds that defendant was not a resident of the municipality when elected and, in any event, subsequently resided outside of the borough. The court upheld both contentions and gave him judgment. The issues of plaintiff's title and the time lapse were not discussed. Factually the case apparently supports Mrs. Haack's theory of law. However, this court must decline to follow the implications of the Jacobsen case since they are contrary to the authorities heretofore referred to and since the Jacobsen court never discussed or considered these important issues.
This court, therefore, finds and concludes that Mrs. Haack abandoned all right to the office and cannot claim title to office as a holdover officer. Plaintiff thus has no title to the office under either of her theories.

II. TIME LIMITATION OF R.R. 4:88-15
R.R. 4:88-15(a) reads as follows:
"No proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced, unless it shall be commenced within 45 days of the accrual of the right to such review, hearing or relief, except as provided in paragraph (b) of this rule, and except as provided in Rule 1:3-1."
*539 Plaintiff's right accrued on May 14, 1963, the date of the election, or at the latest on July 1, 1963, the date the new councilmen took office. This suit was instituted on November 13, 1963, which is long after the 45 days allowed in R.R. 4:88-15(a).
Plaintiff asserts that her complaint is not barred because of the 1957 amendment to R.R. 4:88-15, which is now subsection (c) of that rule and which reads as follows:
"(c) Where it is manifest that the interests of justice require, the court may enlarge the period of time provided for in paragraph (a) or (b) of this rule."
The intent of subsection (c) was described by our Supreme Court in Schack v. Trimble, 28 N.J. 40 (1958):
"* * * But it is equally true that paragraph (c) is merely an attempt to restate in the form of a generalized standard, decisional exceptions which had already been engrafted upon the rule. It will thus be useful to consider the nature of those exceptions, both for the purpose of the disposition of the procedural question on this appeal and to attempt to provide for the future a specific content to the phrase `where it is manifest that the interest of justice require' in R.R. 4:88-15(c)." (at p. 48)
The court went on to point out that those exceptions were cases involving constitutional questions, and ex parte or informal administrative determinations which ordinarily do not sufficiently crystallize a dispute along firm lines to call forth the policy of repose.
In Olsen v. Borough of Fair Haven, 64 N.J. Super. 90 (App. Div. 1960), the court held that plaintiffs' attack on the original ordinance was properly dismissed where they sought to attack a building permit ten months after issuance. R.R. 4:88-15(c) did not enlarge the time where plaintiffs showed nothing to explain the ten months' lapse.
In United States ex rel. Arant v. Lane, 249 U.S. 367, 372, 39 S.Ct. 293, 294, 63 L.Ed. 650 (1919), Mr. Justice Clarke stated the considerations which dictate prompt action in a case involving a public official:
*540 "When a public official is unlawfuly removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the government service may be disturbed as little as possible and that two salaries shall not be paid for a single service."
Mrs. Haack comes under none of the exceptions which would justify the application of subsection (c) of R.R. 4:88-15. She does not represent the public interest. She seeks merely to vindicate a personal right and therefore has no greater standing than any other private litigant. No constitutional question is involved, nor is this an attempt to review an informal administrative order where the issue is not firmly crystallized. No proof has been offered that she lacked knowledge of the allegations in her complaint at the time of the election. In fact, the inference is to the contrary. As a matter of fact, Ranieri's vote was never challenged. In short, Mrs. Haack has slept on her rights in a situation where the compelling need for a policy of repose is obvious. She is, therefore, barred by R.R. 4:88-15(a).

III. RESIDENCE REQUIREMENTS
N.J.S.A. 40:69A-153 requires candidates in cities under the Mayor-Council Plan D of the Faulkner Act to be registered voters. To be a registered voter in the City of Hoboken for the May 1963 election, the defendant would have had to actually reside in the State for six months, in the county for 60 days (N.J. Constit. 1947, Art. II, Sec. III) and in the municipality for 30 days (R.S. 19:4-2). The 60-day county residence requirement was subsequently reduced to 40 days by constitutional amendment. Plaintiff contends that if a prior registration of defendant were now determined to have been defective because of an improper statement of residence, this perforce invalidates a subsequent transfer in registration by defendant to his actual place of residence. She claims that *541 the only way defendant could validly be registered would be through a reregistration. Reregistration is the procedure followed in cases where the registrant's card has been placed in the inactive file. N.J.S.A. 19:31-19 reads as follows:
"The commissioner shall transfer to the inactive file the permanent registration and record of voting forms of such persons as a judge of the Superior Court, or a judge of the County Court may, as hereinafter provided, order stricken from the signature copy register.
The registrant shall be notified by the commissioner by registered mail of any transfer made pursuant to this section.
After the permanent registration form of any person has been placed in the inactive file for any reason whatsoever, the Commissioner of Registration shall stamp across the face of said registration form in red ink with a rubber stamp, in type at least one inch high, the word void and underneath said word inactive, and thereafter, the said form shall not be restored, reinstated or retransferred to the active file.
Any person whose permanent registration form has been transferred to the inactive file shall be required to reregister, in order to be eligible to vote.
In no event, shall any person's registration form number which has been transferred to the inactive file be again used as the registration number of that person or any other person."
Defendant's registration card, which indicated that 129 Washington Street, Hoboken, was his residence, was never placed in the inactive file. The need for a reregistration procedure did not exist. A transfer to the place of actual residence, to wit, 100 Bloomfield Street, Hoboken, was properly noted on the original registration card which had not been defaced with the "void" or "inactive" stamps. Reregistration procedure was not applicable to such a case as this, where the card was never placed in the inactive file.
Before the advent of permanent registration, voters were required to register for each election. The validity of the registration related to that particular election. Although permanent registration did away with the need of registration for each election, registration still remains a way of judging a voter's eligibility for a specific election. Therefore, the validity of a registration for a specific election depends on *542 whether the new registered address coincides with actual residence.
It follows that an erroneous statement of residence on a permanent registration card utilized for a prior election cannot affect or invalidate the current franchise of a voter as long as his permanent registration card indicates that a transfer of residence has been made thereon in accordance with the election laws to coincide with actual residence.
We turn now to the issue of whether defendant was a bona fide resident of 100 Bloomfield Street, Hoboken, from January 1963 to June 1963.
A councilman's eligibility is to be determined as of the day he was elected. In re Ray, 26 N.J. Misc. 56, 56 A.2d 761 (Cir. Ct. 1947). Residential requirement to hold office is the same as the residence requirements to vote. The residence required is equivalent to that of domicile.
"* * * A person may have more than one residence but may not have more than one domicile. His permanent home is his domicile and the place of his domicile determines his right to vote. The domicile is the place of his abode where he has the present intention of remaining and to which, if absent, he intends to return." State v. Atti, 127 N.J.L. 39, 41-42 (Sup. Ct. 1941), affirmed 128 N.J.L. 318 (E. & A. 1942)
See also State v. Benny, 20 N.J. 238 (1955).
The court in In re McCarthy, 18 N.J. Misc. 5, 10 A.2d 142 (Cir. Ct. 1939), dealt rather extensively with this issue and the guidelines established there bear repetition here:
"* * * A term that is very often used by voters that results in confusion and the casting of illegal votes is the claim that a voter has a `voting residence.' The opinion prevails with not a small number of voters that all they have to do to qualify on the question of residence in order to vote legally is to declare that a certain address is their voting residence. It is not sufficient to comply with the statute on this qualification to merely designate an address as a voting residence, the law requires that the residence of the voter must be real, actual and positive. To be a `voting residence' there must be not only the intention of having the address for the purposes of voting but that intention must be accompanied by acts of living, *543 dwelling, lodging or residing sufficient to reasonably establish that it it is the real and actual residence of the voter. If the term `voting residence' fulfills those qualifications then it may be said to be a voting residence. If by voting residence is meant that a voter simply declares that a certain residence is his voting residence and there appears no outward act of living, dwelling, lodging or making the place his actual residence then such `voting residence' does not fulfill the requirements of the law and a person voting in an election district where such `voting residence' is situate cannot legally cast a vote in that district. The voter must not only have the intent of designating a place as his or her residence but such expression of intention must be accompanied by acts in furtherance of that intention and those acts should be actual. The best and most trustworthy evidence of a voter's residence, as a general rule, are his acts rather than his declarations concerning his residence. It is difficult to set a hard and fast rule as to what constitutes actual residence and each case that arises may require individual consideration, but this much is certain that the voter must not only exercise an intention of having a place as his residence but that intention must be accompanied and fortified by actual and real acts of residing at the intended residence. A man may have more than one residence; he may live in one place during the summer and another in the winter but as far as voting qualifications required by the state of New Jersey are concerned he can vote only from the place where he actually resides in the state of New Jersey and not elsewhere. * * * The test, therefore, of actual residence cannot be measured by the period of time that a person resides at a given address, the time may be short or it may be long but whether short or long there must be an intention to reside at the place and that intention must be supported by actual acts of living at the residence to such a degree that they reasonably show that the party intended the residence as his real and actual residence." (at pp. 14-16)
This court notes that the 1960 law concerning dual residences, N.J.S.A. 19:4-4.1 et seq., is not involved in this case, since defendant never attempted to employ its optional provisions.
This court is aware that many well-intentioned people who have several residences honestly believe that they can choose any one of their residences as their voting residence without giving any consideration to the many elements that constitute legal domicile, which is necessary under our voting laws. This is obviously contrary to law.
Assuming that such was the situation with defendant's residence at 129 Washington Street, Hoboken, prior *544 to January 1963, it avails plaintiff nothing. The only crucial factual issue is whether the defendant actually resided at 100 Bloomfield Street, Hoboken, in January 1963 and acquired a domicile there. This court holds that he did.
A person should not be disenfranchised unless the proofs are cogent and strong that he is not entitled to exercise his right to vote. On the important question of defendant's residence from January 1963 to June 1963, plaintiff has failed to carry her burden of proof. Intention is a difficult thing to establish. Resort must be had to external acts from which intent may be inferred. Defendant rented and furnished an apartment at 100 Bloomfield Street, Hoboken, in January 1963. He transferred his voting registration to that address. He lived there with his wife and children. The proofs fail to indicate that he did not have the intention to remain a resident of Hoboken.
Upon all the evidence, this court finds and determines that defendant Ranieri acquired a bona fide domicile at 100 Bloomfield Street, Hoboken, in January 1963, and continued at that domicile until his transfer to 226 Hudson Street, Hoboken, in June 1963. He was, therefore, eligible to run for councilman in the May 1963 municipal election in Hoboken.
Judgment for defendant.