187 So. 484

**RAINWATER et al. v. STATE ex rel. STRICKLAND et al.**

**7 Div. 548.**

Supreme Court of Alabama.

Feb. 23, 1939.

Rehearing Denied March 30, 1939.

L. H. Ellis, of Columbiana, for appellants.

Knox, Dixon & Dixon and George F. Wooten, all of Talladega, for appellees.

BROWN, Justice.

Action in the nature of quo warranto, authorized by §§ 9932, 9938, of the Code, instituted on the relation of appellees, Strickland, Nicholls and DeLoach, against appellants to oust appellants from the office of Aldermen of the Town of Childersburg, a municipal corporation, the relators joining as plaintiffs, seeking their installation in said offices.

The sufficiency of the complaint is not questioned, but the court sustained a demurrer to defendants' pleas 3, 6, 7, 8, 9 and 10, the defendants refused to plead over, suffered judgment and appeal. Pleas 3, 6, 7 and 8 go to the right of the relators to invoke judicial interposition to oust the defendants, and pleas 9 and 10 go to the right of the relators to be installed in said offices.

The respondents insist, first, that the relators by participating in the calling of the election, in standing as candidates therein against respondents, and declaring the results, affirming the election of the respondents by a majority of the qualified electorate, are estopped to invoke the court's jurisdiction and power to oust them from said offices; and, second, that said relators by their conduct voluntarily abandoned said offices and are not entitled to be restored thereto.

The facts out of which the controversies arise, as shown by the pleadings, briefly stated are: At an election held on the third Monday in September, 1936, the relators, along with Moody and Keith, were elected respectively to the office of Aldermen of the Town of Childersburg, and assumed

the duties and exercised the functions of said office, along with M. J. Cliett as Mayor, until midnight of September 30, 1938. On August 2, 1938,. the Board of Mayor and Aldermen of said town, constituted as above stated, passed a resolution which was entered on the minutes of said Board calling an election to be held in and for said town by the electorate on the 19th day of September, 1938, for the election of a Mayor and five Aldermen, whose term of office should begin on October 1, 1938, and expire on the 30th of September, 1940, and fixed the time for the qualifications of candidates who desired to stand for election to said offices.

On September 3, 1938, the said Board as so constituted met in special session, completed the plans for holding said election, recognized the proper qualifications of the candidates who had filed as such candidates, including the relators and respondents, provided for the appointment of the officers to serve in holding said election, canvassing the votes and making due return to the Board of Mayor and Aldermen as then constituted. The election was held on the date named by the officers appointed by the Board, the votes canvassed and due returns made showing that Boaz received the majority of the votes for mayor; that Moody and Keith, two of the Board as then constituted, received a majority over their opponents; and that the respondents Thompson, Veazey and Rainwater defeated the relators Strickland, Nicholls and DeLoach. These returns were approved by the then Board of Mayor and Aldermen of the town, and Boaz, Moody, Keith, Thompson, Veazey and Rainwater were by resolutions of the Board unanimously adopted, declared duly elected to said offices, and without objections entered upon the discharge of the duties thereof, Cliett, Strickland, Nicholls and DeLoach voluntarily retiring therefrom. The pleas further aver that respondents were by the voluntary conduct and acts of said Board invited and induced to participate in said election, and caused to spend time and energy in procuring their election to said offices.

Plea 9, after stating the facts above outlined embodied in some of the other pleas, further avers: "The petitioners by their voluntary action, as aforesaid, vacated said offices as members of the Council of said municipality, and are now estopped from being reinstated therein by the judgment of this court."

Plea 10, after stating said facts, avers: "Prior to the commencement of this action and before these respondents assumed the duties as members of the Council of the Town of Childersburg, Alabama, petitioners as hereinbefore shown and set out voluntarily abandoned their membership as members of said Town Council of said Town of Childersburg, Alabama, and thereby estopped themselves from now being reinstated thereto in the present proceedings."

Section 1754 of the Code of 1923 provides that: "The regular municipal elections in cities and towns shall be held on the third Monday in September, 1908, and biennially thereafter. Municipal officers elected at such elections shall assume the duties of their respective offices on the first Monday in October following such election, unless herein otherwise provided. The voting places shall be fixed by the council, one or more voting places for each ward, where such city or town has been divided into wards, and the election shall be conducted in the manner provided by law for general elections, except as otherwise provided."

This section of the Code was amended by the Act approved September 9, 1927, by adding a proviso thereto which related to cities of over two thousand population, making the offices in such cities elective quadrennially. Acts 1927, p. 706.

The Legislature at the regular session 1931, ignoring the Act of 1927, amended this same Section 1754, to like effect as the Act of 1927, except in the 1931 Act the section was rewritten. Acts 1931, p. 436.

The Legislature at the regular session 1935, ignoring the last amendment of 1931, by Act No. 516 amended the amendatory Act of 1927 so as to read: "The regular municipal elections in cities and towns shall be held on the third Monday in September, 1936, and quadrennially thereafter. Municipal officers elected at such elections shall assume the duties of their respective offices on the first Monday in October following such election, unless herein otherwise provided. The voting places shall be fixed by the Council, one or more voting places for each ward, where such city or town has been divided into wards, and the election shall be conducted in the manner provided by law for general elections, except as otherwise provided in this chapter. Provided that this shall not affect cities under commission form of government." Acts 1935, p. 1105.

The controversy here arises out of ignorance of this last amendment on the part of the Mayor and Aldermen of Childersburg. Not a mistake of fact but ignorance of the law. *"Ignorantia juris quod quisque tenetur scire, neminem excusat."* Black's Law Dig. p. 590. [Italics supplied.]

The election was held on the third Monday in September, 1938, and but for this last amendment it would be in all things regular.

Section 1886 of the Code, provides: "If the election hereinbefore provided for should not take place on the day appointed, the corporation shall not for that cause be dissolved, but the incumbents shall remain in office until their successors shall be elected and qualified. The council shall fix some day, as early as convenient, on which day said election shall be held, which election shall be conducted in all respects as a regular election, and the persons so elected shall hold their office until the next general election and until their successors are elected and qualified."

While it must be conceded that time, place and a qualified electorate are the essential elements of a valid election, and that statutes specifying the date of holding an election are regarded ordinarily, as mandatory, nevertheless, we find many well considered authorities holding that statutes providing for periodical elections in municipalities are merely directory. In fact, the weight of authority, in numbers at least, is to this effect. Ann.Cas.1913E, page 374; 19 R.C.L. p. 998, § 19; Coles County v. Allison, 23 Ill. 437.

It has been observed: " 'The sounder and better doctrine' is, as laid down by Chancellor Kent, 'that where the members of a corporation are directed to be annually elected, the words are only directory, and do not take away the power incident to the corporation to elect afterwards, when the annual day has, by some means, free from design or fraud, been passed by.' 2 Kent's Com. 295." People ex rel. v. Town of Fairbury, 51 Ill. 149, 152.

■■ Sections 1754 and 1886, embodied in the chapter of the Code dealing with municipal corporations, are interpreted as in pari materia, though the last cited section may not be applicable to the situation arising in this case, the clear legislative intent is that as to the day of holding the election the provisions of the statute are directory, and within the rule laid down in R. C.L. § 19, p. 998, that: "A statutory provision as to the time for holding an election will be treated as directory where it appears from the general scope and policy that such is the legislative intent."

■ The authorities sustain the proposition that where an election held by a municipal corporation "Clearly expresses the will of the voters, the courts are disinclined to set it aside because of a departure from a statutory provision as to the time of holding it even if this be regarded as mandatory; and so if it does not appear that the holding of an election on a day different from the day fixed by law was induced by any corrupt or fraudulent motives, that it was the result purely of mistake and no one was prevented from voting thereby, the court may in the exercise of its discretion refuse to consider an attack upon its validity." 9 R.C.L. p. 998, § 19; 20 C.J. 101, 102, § 87; State ex rel. v. Tolan, 33 N. J.Law 195.

The case last cited is "a gray horse case." It was there observed: "It is not alleged that the holding of the election on a day different from the day fixed by law, was induced by any corrupt, fraudulent, or indirect motive. It is shown that it was the result purely of a mistake. The number of votes cast at the election, shows that the election was largely attended by the qualified voters. There is no complaint that it was unfairly conducted, nor that a single voter was prevented from exercising his franchise of voting, because of the time of holding the election. In all other respects, except as to the day, the election was held in complete accordance with the law. In that respect the non-compliance was due to an honest mistake. Circumstances such as those here stated, induced the Court of King's Bench, in The King v. Parry, to refuse leave to file an information, where the title of the defendants was clearly defective."

It is no answer to these authorities that the court, as it had a right under the common law to do, exercised a sound judicial discretion in refusing to inquire into the validity of the election. As observed by the Code Commissioner in his "note" following § 9929 of the Code: "This chapter first appeared in the Code of 1852. It was practically taken from the old English statutes, and was a part of our common law before the Code of 1852." Code 1923, Vol. 4, p. 639. And as observed in The State ex rel. Fitts v. Elliott, 117 Ala. 172, 173, 23 So. 43: "Indeed, the statutory sys-

tem preserves, substantially, the principles of the common-law remedy, only regulating, as was within perfect legislative competency, by whom, in whose names and behalf, and by what procedure, public and private rights, which the common-law information was adequate to redress, should be set on foot and adjudicated."

■ The statute authorizes the action to be instituted by complaint and summons. Code 1923, §§ 9936, 9938, 9940. The issuance of an alternative writ is neither authorized nor required.

Section 9933 recognizes the court's discretion in respect to the proceeding, and § 9938 authorizes the informant or informants to join as plaintiffs for the limited purpose indicated by § 9941, which provides: "When the action is brought against a person for usurping an office, the name of the person rightly entitled * * * thereto, may be added, and, when added, judgment *may* be rendered upon the right of the defendant, and also upon the right of the party so alleged to be entitled; or only upon the right of the defendant, as *justice may require.*" [Italics supplied.] This statute clearly recognizes that the court is invested with a sound judicial discretion.

The other phase of the case presented by the ruling on the demurrer is whether or not the facts alleged in the pleas show abandonment of said office by the relators, and whether or not they are estopped to invoke the court's jurisdiction to oust the defendants, and have themselves installed in said offices.

■■ The statute provides that an office may be vacated by resignation or abandonment. Code 1923, § 2697.

"Abandonment is a species of resignation, but differs from resignation in that resignation is a formal relinquishment, while abandonment is a voluntary relinquishment through nonuser. Although the intention may be inferred, an office cannot be abandoned without an intention by the officer to relinquish it, and such a relinquishment is not produced merely by a temporary nonuser or neglect of duty. While, in order to constitute an abandonment of an office, it must be total, and under such circumstances as clearly to indicate an absolute relinquishment, the determination of the question whether an officer has abandoned an office is dependent upon his overt acts rather than upon his declared intention, and the law will infer a relinquishment where the conduct of the officer indicates that he has completely abandoned the duties of the office." 46 C.J. 980, § 137.

■ "The abandonment of an office may be indicated by the action of the incumbent in voluntarily surrendering it to another under a mistaken belief that the latter has been elected as his rightful successor." 22 R.C.L. 560, § 264; Attorney General ex rel. Moreland v. Maybury, 141 Mich. 31, 104 N.W. 324, 113 Am.St.Rep. 512, and note page 518.

■ And if the incumbent, after competing with an opponent as a candidate in an election, is defeated, and by official action recognizes the election of his opponent and surrenders the office to him, he, as a matter of law, abandons the office and is estopped to invoke the court's jurisdiction to inquire into the validity of such election, either to oust his opponent or have himself reinstated in the office. Reg. v. Greene, 2 Q. B. 460, 6 Juris (1842) 777.

This is a leading case, decided in 1842, in a quo warranto brought under the English statute after which our quo warranto statutes are patterned, adopted in the Code of 1852.

In the last cited case Lord Denman, C. J., speaking observed: "I think the objection must prevail. Authorities are not very material here: the objection rests on a principle on which this court has always acted, that where a person has voluntarily concurred in inducing another to enter upon the exercise of an office, he can not afterwards come to this court to expel him from it." The Jurist, Vol. 6, p. 777. The other three Judges, in separate opinions, concurred.

This decision is made the basis for the text of Herman on Estoppel to the effect "Inducing one to act as an officer, or a party who has concurred in inducing one to act, is estopped from making an application in the nature of a quo warranto to eject him from the office." Herman on Estoppel (1871 Ed.), p. 535, § 574.

■ The incumbents are certainly de facto officers exercising the powers of a de jure office, and their official acts are not subject to attack. They were selected by the qualified resident voters, in the exercise of local self government, the fundamental thought underlying the foundations of municipal corporations. 22 R.C.L. 560, § 264; City of Eufaula v. McNab, 67 Ala. 588, 42 Am.Rep. 118; Fox v. McDonald,

101 Ala. 51, 67, 13 So. 416, 21 L.R.A. 529, 46 Am.St.Rep. 98; 43 C.J. pp. 70, 71, § 6.

 And the courts on principles heretofore stated will not inquire into their incumbency at the instance of the relators.

The Circuit Court erred, therefore, in overruling the demurrers to said pleas 6, 7, 8, 9 and 10.

Reversed and remanded.

ANDERSON, C. J., and THOMAS, FOSTER, and KNIGHT, JJ., concur.