[No. 31385. Department Two. November 16, 1950.]

ENSLEY M. LLEWELLYN, *Respondent*, v. ARTHUR B. LANGLIE, *as Governor, Appellant.*[1]

*The Attorney General* and *E. W. Anderson, Special Assistant,* for appellant.

*John A. Burns* and *Smithmoore P. Myers,* for respondent.

GRADY, J.—This appeal is from a decree of the superior court of Washington for Thurston county adjudging that respondent is the *de facto* adjutant general of the state of Washington and is entitled to immediate possession of that office, and enjoining and restraining appellant from interfering with respondent in the performance of the duties thereof or his occupancy of the official headquarters.

February 25, 1947, by executive order made by the governor of Washington, Major General Maurice Thompson, Washington National Guard, retired, was relieved from active service and from detail as acting adjutant general of the state of Washington at his own request, and Major Ensley M. Llewellyn, adjutant general's department, Wash-

[1] Reported in 224 P. (2d) 321.

ington National Guard, was commissioned brigadier general and ordered to active service and was detailed as adjutant general of the state of Washington.

May 2, 1949, the governor, by executive order, suspended respondent from performing the duties of adjutant general and appointed a board of inquiry, composed of three retired officers of the Washington National Guard, to investigate certain specified claimed irregularities in his conduct of the office of adjutant general. July 2, 1949, the board of inquiry made its report and recommendations to the governor. July 8, 1949, the governor made an order based upon such findings and recommendations dismissing Brigadier General E. M. Llewellyn from the office of adjutant general of the Washington National Guard, and on the same day, by executive order, relieved him from active service and from detail as the adjutant general, and directed that he be reverted to his former status as major, AGD, State Hq. & Hq. Detachment, WNG. He was ordered to transmit to Col. Ellsworth C. French, AF, Washington National Guard, any and all state and Federal funds, property, records and the seal of the adjutant general in his custody, or under his control, for which he had been responsible in his capacity as adjutant general. By the same executive order, Col. French was appointed acting adjutant general. July 29, 1949, the governor, by executive order, relieved Col. French as acting adjutant general, effective July 31, 1949, and ordered Lt. Colonel Lilburn H. Stevens to active service and detailed him as adjutant general, effective August 1, 1949.

In his testimony given at the trial of this action, respondent stated that he had not in any way abandoned the office of adjutant general, but obeyed the order of the commander-in-chief of the Washington National Guard to vacate the office headquarters of the adjutant general. Thereafter he attended reviews claiming to act as adjutant general, and kept in his possession some of the books and records of that official. He stated that he had not officially turned anything over to his successor as ordered by the commander-in-chief, and did not comply with general order 11 (order of July 8,

1949). Pending certain court proceedings, respondent returned to the office headquarters and remained there about ten days.

The theory advanced by respondent is that his removal from office was without authority and illegal and that he is now *de facto* adjutant general; that the acts of the governor in ordering him to vacate the office headquarters and appointing Col. French as acting adjutant general, and thereafter detailing Lt. Col. Stevens as the adjutant general, constitute an interference with the performance of his duties as adjutant general. His claim is that he is entitled to injunctive relief from such interference. It is the theory of the appellant that, by reason of the executive orders above referred to, respondent ceased to be adjutant general and has been succeeded by General Stevens, and if respondent desires to assert his claimed rights he must proceed by *quo warranto* to have adjudicated who has title to the office of adjutant general.

The parties hereto agree that this is not a *quo warranto* proceeding and cannot be treated as such; also that there cannot exist two *de facto* officers holding the office of adjutant general. The questions brought before this court for review are: (1) whether respondent is the *de facto* adjutant general of the state of Washington and entitled to immediate possession of that office, and (2) whether possession of the office headquarters may be obtained by means of injunctive process.

Art. III, § 8 of our constitution provides that the governor "shall be commander-in-chief of the military in the state, except when they shall be called into the service of the United States."

Art. X, § 2 provides as follows:

"The legislature shall provide by law for organizing and disciplining the militia in such manner as it may deem expedient, not incompatible with the constitution and laws of the United States. Officers of the militia shall be elected or appointed in such manner as the legislature shall from time to time direct, and shall be commissioned by the governor. The governor shall have power to call forth the

militia to execute the laws of the state to suppress insurrections and repel invasions."

Chapter 130, p. 353, of the Laws of 1943 (Rem. Supp. 1943, § 8603-1 *et seq.*), constitutes the military code of the state of Washington. In obedience to the mandate of the constitution, the legislature provided that officers of the militia should be appointed, and by § 21 of the act (Rem. Supp. 1943, § 8603-21) provided as follows:

"Whenever a vacancy has occurred, or shall be about to occur in the office of the Adjutant General of this state, the Governor shall order to active service for that position from the Active List of the Organized Militia of Washington an officer not below the rank of a Field Officer who shall have had at least ten (10) years service as an officer of the Active List of the Organized Militia during the fifteen (15) years next prior to such detail. The officer so detailed shall during the continuance of his service as the Adjutant General hold the rank of a General Officer."

Section 16 of the act (Rem. Supp. 1943, § 8603-16) provides:

"The Adjutant General shall be chief of staff to the Governor. He shall not be removed from office except for cause as provided by the military laws of this state. He shall appoint the civilian employees and other personnel of his department and may remove any of them in his discretion."

This section prescribes administrative duties the adjutant general must perform. Section 83 declares certain acts to constitute military offenses, and §§ 56 and 57 provide for military tribunals and military courts. Their jurisdiction is defined and the penalties they may impose are provided.

A consideration of the foregoing constitutional and statutory provisions makes it very clear that it is the title to the office of adjutant general that must ultimately be decided rather than whether appellant is merely interfering with the adjutant general in the performance of his duties or his occupancy of the official headquarters of that office. The charges made by appellant against respondent and which were the subject of inquiry by the board appointed by the governor were not of military offenses triable by court martial, but related to the performance of administrative duties.

█ We are not concerned in this proceeding whether an adjutant general may be legally relieved from active service and reverted to his former status in the national guard, but this is just what the commander-in-chief of the military did by his executive order. It is our opinion that, by virtue of such order, Lt. Col. Stevens became adjutant general, at least *de facto,* and that if respondent desires to test the validity of the order and have his status determined he must proceed by *quo warranto* with General Stevens a party to the action.

█ To permit the use of injunctive process as is now being sought by respondent would constitute a collateral attack upon an order of the governor and would in effect be trying title to office by indirection, and such is not the scope or purpose of that remedy. Rem. Rev. Stat., §§ 719, 1034 [P.P.C. §§ 59-3, 90-1]; *State ex rel. Heilbron v. Van Brocklin,* 8 Wash. 557, 36 Pac. 495; *Mullen v. Tacoma,* 16 Wash. 82, 47 Pac. 215; *State ex rel. Fairbanks v. Superior Court,* 17 Wash. 12, 48 Pac. 741, 61 Am. St. 893; *State ex rel. Dent v. McLennan,* 110 Wash. 16, 187 Pac. 408; *Manlove v. Johnson,* 198 Wash. 280, 88 P. (2d) 397; *State ex rel. Tennent v. Tollefson,* 4 Wn. (2d) 194, 103 P. (2d) 36. These are some of the many cases in which this court has decided that, where two persons claim title to the same office, they cannot resort to either of the remedies of injunction or mandamus but must proceed by *quo warranto.*

We do not desire, nor is it our intention by anything said in this opinion, to express any views as to the validity or ultimate effect of the executive orders made by the governor, but they must be accorded a presumption of validity and be recognized as effective until such time as they are held to be invalid in an appropriate judicial proceeding.

The judgment is reversed, and the cause remanded so that the decree appealed from may be vacated.

ROBINSON, MALLERY, SCHWELLENBACH, and HILL, JJ., concur.