Spencer et al., Appellants, *v.* City of Dayton et al.,
Appellees.

[Cite as Spencer v. Dayton (1975), 44 Ohio App. 2d 236.]

(No. 4809—Decided April 24, 1975.)

*Mr. Robert D. Holmes* and *Mr. Joseph R. Doelker,* for
appellants.

*Mr. James W. Drake* and *Mr. Thomas P. Randolph,* for
appellees.

*Mr. Paul M. Hunter,* amicus curiae.

McBride, J. This action was commenced by a group
of police officers against the city of Dayton, the city mana-
ger, the chief of police and the civil service board and its

members. Since the civil service board cannot change its rules under the charter, except upon the approval of the city commission, the action appears to be primarily against the municipality. All defendants were represented by counsel for the city.

The plaintiffs sought to restrain a competitive civil service examination and a plan to make promotions allegedly in violation of the charter, the rules of the civil service board and the rights of the plaintiffs. After a hearing, the trial court denied a preliminary restraining order and thereafter the parties agreed to a final entry, approved by the trial court.

The creation and promotion to twenty-four new positions and one vacancy in the police department has a history all its own. An early indication of such effort was before this court in *F. O. P.* v. *Dayton* (1973), 35 Ohio App. 2d 196. The latest round developed complications of its own.

It appears from supplemental exhibits filed at the time of argument that litigation is pending in the Federal District Court; however, this court was advised that the city of Dayton was dismissed as a party, and that the individuals involved entered into an agreement. At argument, counsel for the plaintiffs indicated that the issues here are different. Counsel for the city stated they had no reason for requesting removal of the instant case. There may be a question whether that agreement was implemented by the municipal government and whether municipal activities were within the instructions in the entries dated December 13, 1973, and July 18, 1974, that "required a plan within the framework of civil service laws * * *."

The plaintiff, the appellant herein, makes the following assignment of errors, which are summarized for the purpose of this review:

1. Permitting promotion in the police department without recognition of seniority as a part of the competitive examination aggregate grade, as provided by the charter and rules.

2. Permitting promotion in the police department with-

out recognition of weight to be given for records of efficiency, contrary to law.

3. Permitting officers, who never performed in the rank of sergeant, to participate in the lieutenant's examination contrary to the charter and Rule 17 of the Rules of the Civil Service Board.

4. In holding that Rule 6 of the Rules of the Civil Service Board was not in conflict with the charter as applied to elimination of the rank of sergeant, which exists as to pay and duties of existing officers.

5. In permitting an examination for lieutenant when in fact the promotional examination was for a first line supervisor.

6. In failing to find such proposed examination and grading contrary to the charter and rules where

(a) there was no separate examination for sergeants and lieutenants;

(b) the board indicated that the test results would be compiled into separate lists for black and white officers;

(c) The appointing authority failed to make known to the specialist preparing the examination that second line supervisory duties were involved; and

(d) where the eligibility list was to be used for lieutenants who were to replace existing sergeants who had already passed an examination for sergeants' duties.

7. The court erred in permitting the "rule of three" to a large class in which applicants passed over three times would be removed from the eligibility list.

8. In refusing proffer of evidence that a white officer on a previous list was not appointed because of his race.

9. In failing to find discrimination against a group on the basis of race.

It is undisputed that the civil service board intended to eliminate seniority and efficiency as an element of the grading as part of the competitive examination and as an element of eligibility for promotion. The defendants, the appellees, took the position that these factors may, but were not required to be taken into consideration in making promotions. No guides or standards were to be imposed for

this examination for consideration of either seniority or efficiency, these factors being left completely open for consideration or not by the chief of police, who made the appointments, and by the city manager, who must approve them. Seniority and experience were to be ignored for this single group of promotions, subject only to the uncontrolled discretion of the chief of police and the city manager. No charter or rule changes were made to implement this action.

The city of Dayton operates under a charter, of which sections 93 to 108 control the employment and promotion under civil service. Section 95-2A provides that the competitive class of classified service "shall include all positions and employment for which it is practicable to determine the *merit and fitness* of applicants by competitive examination."

The record does not suggest positions in the police department were classified, as contemplated in the charter; however, it is agreed that competitive examinations have always been conducted, and experience and seniority recognized in the aggergate grade for promotion for such positions. To determine the classification of positions or the relationship of one position to another in the police department, it was necessary to resort to work assignments and to payroll records, rather than rules of the civil service board.

Section 96 of the charter provides that the civil service board, "subject to the approval of the commission, shall adopt * * * a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on *merit, efficiency, character* and *industry,* which shall have the force and effect of law * * *."

Section 98 provides that "The board shall provide for promotion to all positions in the classified service, based on *records* of *merit, efficiency, character, conduct* and *seniority.*"

These factors, mandated by the charter, have been implemented by the Rules of the Civil Service Board, approved by the city commission, which for promotion require con-

sideration of *records* of *efficiency* and *conduct,* as well as *seniority,* in determining eligibility rating after competitive examination. Rules 15 and 17.

It is undisputed that these provisions of the charter of the city of Dayton and the rules of the Civil Service Board have not been modified or repealed. The significance of the charter and the laws adopted thereunder is embedded in Article XVIII, Section 7 of the Constitution of Ohio, as follows:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government." Section 3 of Article XVIII provides:

"Municipalities shall have authority to exercise *all powers of local self-government* and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Emphasis added.)

Since the enactment of the home rule amendment of 1912, municipalities derive all their powers of local self-government from the Constitution. The provision is self-executing and requires no legislation to make it available to the municipalities. Questions have arisen as to the distinction between all powers of local self-government and local police, sanitary and similar regulations. The latter may not conflict with general laws of the state.

The question of the applicability of the appropriate clause of Section 3, Article XVIII of the Constitution to local civil service, as it relates to a police department, was before the Supreme Court of Ohio in *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191. The court found that the charter provisions relating to civil service are exercised under the *powers of local self-government* as distinguished from police, sanitary and other regulations; therefore, city charters and civil service regulations may conflict with the general laws, meaning the statutes of Ohio. The mere fact that the exercise of a power of local self-government may happen to relate to the police department does not

make it a police regulation. (Paragraph five of the syllabus.)

It is clear that the provisions of the charter and of laws and regulations thereunder governing civil service flow directly from the Constitution of Ohio and are just as binding upon the city of Dayton, the civil service board and its agencies and employees as the Constitution and statutes are upon others in Ohio outside of charter cities. Neither the city of Dayton, nor its agencies or employees may violate the charter or any laws or rules adopted thereunder. It is equally true that where the charter or any law, rule or regulation adopted thereunder has not been changed, there is no power to take any action inconsistent with such laws, rules or regulations. The action of the civil service board on July 9, 1974, eliminating credit for seniority and efficiency without a rule change and without approval of such rule by the city commission is a nullity because it violates the city charter. It also violates the Rules of the Civil Service Board.

This review of the fundamental law is necessary because in the record it appears that other steps were also taken in anticipation of future changes in the Rules of the Civil Service Board. This appears first in the opening statement in a separate transcript. Counsel for the city informed the court that a provision for a lieutenant's position did not appear in Amended Rule 6 of the civil service board. Changes had not caught up with the nomenclature, he said. No, the amended rule had not been changed. This may be done, he said, after the promotional examination!

The significance of this arbitrary action, beyond the charter and the rules, is apparent because Rule 6 of the civil service board relates to entirely different positions with no classified relationship to each other. Rule 6 formerly provided for the promotion of sergeants and lieutenants. It was amended, deleting such officers, and substituting the positions of police supervisor and police specialist. The amended rule has no provision for sergeants and lieutenants. Having eliminated both, there is no local law under which to conduct a lieutenant's examination, as announced.

With reference to nomenclature and a proposed future change in the rules, it is argued that the difference is one of title only; however, this argument fails because the position and its duties are not identified and the announced examination could, at the will of any individual in authority, be for any one of several positions. There is no legally recognized similarity in the qualifications or function of supervisor or specialist positions and no way in which such an officer could be promoted to the former position of sergeant or lieutenant. To conduct an examination on the basis of the hope of undisclosed parties that the law of the city of Dayton may be changed to conform to the title of the position, its future job description and qualifications is contrary to law. It is trite but true that we are governed by law and not by persons.

A similar condition of unwarranted and arbitrary action exists with respect to efficiency and seniority. Section 98 of the charter provides that the civil service board:

"* * * shall provide for promotion to all positions in the classified service, based on records of merit, efficiency, character, conduct and seniority."

This fundamental charter law was implemented by Rules 15 and 17 and others which record the method of executing the charter command by credits for seniority and efficiency to be calculated on the scores after competitive examination. The civil service board has no option other than to follow the charter and its own rules as approved by the city commission.

Counsel for the city of Dayton and the record confirm as a fact that the charter and the rules, which are the only applicable Ohio law, have not been changed. It is possible for the civil service board with the approval of the city commission to vary the degree of credit for efficiency and seniority but it is not possible to nullify or ignore the charter command or its own rules.

Lurking in the background is the probability that, if rules are amended, consideration must be given to the effect upon all classifiied civil service employees in every department of the city of Dayton. The realities of this situation

may explain why no effort was made to amend the charter or the rules of the civil service board.

With respect to the announced competitive examination it is undisputed that Amended Rule 6 contains no provision for a promotional examination for a position idenfied as lieutenant and further that no amendment to the charter or the rules has been adopted either to reduce or to eliminate the application of credits for seniority and experience to test scores.

The argument of the city of Dayton that members of the civil service board and municipal authorities may do as they please after the competitive examination justifies serious misgivings and encourages further unnecessary litigation. Candidates who do not receive credit for efficiency ratings cannot sit idly by as against appointees who take an examination in good faith. If they do, they waive their right to quo warranto to challenge the appointments. *State, ex rel. Mikus, Pros. Atty.,* v. *Hirbe* (1966), 7 Ohio St. 2d 104.

As held in *State, ex rel. Polen,* v. *Wymer* (1973), 36 Ohio St. 2d 24, affirmative action must be taken to prevent certification or permanent appointment. However, quo warranto against the appointee was affirmed in *State, ex rel. Ethell,* v. *Hendricks* (1956), 165 Ohio St. 217, because the examination was contrary to law. While the latter case involved R. C. 143.01 to 143.48, as applied in a non-charter city, the Supreme Court held in paragraph 2 of the syllabus:

"No position above the rank of patrolman or regular fireman in a police or fire department of a city where the statutes relative to civil service are applicable shall be filled by any person unless he has first passed a competitive promotional examination which shall include in the total grade attainable:

"(a) The grade on an examination composed of questions and answers, which shall be entirely in writing;

"(b) The grade based on credit for seniority in service according to the formula set out in Section 143.16, Revised Code;

"(c) The grade based on credit for efficiency or conduct and capacity in office."

There is no reason to believe that the results would be any different where examinations are conducted under a city charter and local rules of the civil service board that contain provisions somewhat similar to the state statutes. Assignments of Error 1 and 2 are sustained.

As previously discussed, and to the extent that existing rules of the civil service board do not provide for a classsified position known as lieutenant and do not provide for a competitive examination for promotion to the position of lieutenant (but rather for specialist and/or supervisor), Assignments of Error 3, 4, 5 and 6 must be sustained. However, this finding is based upon the foregoing statements and is not supported by the argument that the appropriate governmental agencies may not by formal rule change the classified civil service structure, the salary received, the positions available, the definition of such positions, the waiting time in grade for promotion, or the degree of credit or weight required to be given for records of seniority or efficiency for promotion. The adoption, modification or repeal of civil service rules are matters within · the lawful discretion of the civil service board, subject to the approval of the city commission. Issues of law in these areas under the charter or rules are prospective and are not here resolved. Several possible issues in this area have not been formalized or if adopted, have not been incorporated in the rules by which the board must act. The argument of the city that so-called "de-facto" rules or practices may be followed by the civil service board is contrary to the charter and contrary to law.

The usual practice where positions are eliminated is to provide a grandfather clause for employees currently in such positions. This avoids authorizing a payroll for non-existent positions and complaints of discharge by operation of the rules.

Assignment of Error number 7 relates to what is described as the "rule of three." The local form of this rule appears in Rule 12, Section 3 of the Rules of the Civil Service Board, adopted June 7, 1972, and is as follows:

"The Board will refer the three highest ranking eligi-

bles for each vacancy to be filled from promotional eligible *lists* and one will be appointed. Written reasons shall be provided to the Board if higher ranking eligibles are not selected.''

This rule provides a method of presentation and selection for promotion for one person from the first three eligible *on each separate list* as a result of a competitive civil service examination. It is an exception to the principle of competitive civil service because it grants discretion to the appointing authority to select any one of three top candidates; hence, the expression ''rule of three.'' Use of this legislative exception for one position in a charter city was approved in *State, ex rel. Canada, v. Phillips* (1958), 168 Ohio St 191, even though a state statute then required that the candidate highest on the list be appointed.

Subsequently R. C. 143.20 was enacted, adopting a different rule of three. The following difference appears in the statute:

''If *more than one* position is to be filled, the director of state personnel may certify a group of names *from the eligible list* and the appointing authority shall appoint in the following manner: Beginning at the top of the list, each time a selection is made it must be from one of the *first three candidates remaining on* the list * * *. A person certified from an eligible list more than three times to the same appointing authority for the same or similar positions, *may be omitted* from *future certification* to such appointing authority * * *.'' (Emphasis added.)

There are important distinctions in the state statute because the statute refers to separate certifications on different or future lists, which will not take place in the instant case. It is undisputed that this further exception for elimination of eligibles if submitted on a single or on a separate list was not adopted by the Dayton Civil Service Board or approved by the city commission.

Counsel for the city argues that ''the practice has been established that when one is passed over three times, he is removed from consideration.'' He concedes that Rule 12, Section 3 is silent on this further exception. There is no rec-

ord of this "practice" as a custom and usage in the community or in the state of Ohio under the statute and it is clear that this type of further exception cannot be sustained in the absence of local legislation, regardless of practices.

The "rule of three" is not so well recognized or defined as to become a slippery exception to civil service laws. It depends upon express law for its existence, definition and application. This is particularly true where successful applicants are not only quickly passed over, but eliminated from consideration in a single certification for as many as twenty-four identical positions. For better communication, we refer to the local provision as the "rule of three" and the state statute, as applied to separate eligible lists, as the "*successive* rule of three," which more accurately describes the further exception in the state statute to the principle of civil service as applied to dropping eligible candidates on multiple certifications.

The disregard for the results of a competitive examination under a "successive rule of three' becomes progressively more significant and arbitrary with each appointment of a large group in the same class *in a single certification.* For example: if the appointing authority each time chooses (and there is no control over the choice) the lowest of those eligible for twenty-four positions, then, at the end of the first round of three positions, numbers one and two would be eliminated and three, four and five would be appointed. At this point, under the "successive rule of three," only six, seven and eight could be considered for the fourth position. Following this example, the two scoring the highest in each successive group of five are eliminated from consideration. To fill twenty-four positions, forty eligibles are considered and sixteen or forty percent of the higher eligibles are eliminated from the top and not one of them can compete with candidates lower in this group of forty on the single certification containing an estimated two hundred names.

In this situation, the "successive rule of three" opens a gaping loophole in civil service regulations, provides an opportunity to ignore civil rights and would have a demor-

alizing effect upon all personnel in the city of Dayton. Without passing upon its validity, if it were adopted to apply here, it is clear that such a rule must be found in express law and it must be strictly construed. Where the "successive rule of three" is not expressly authorized by law, the presumption is that the legislative body did not intend to adopt it. As indicated earlier, the argument that the city may follow an unsupported custom or usage, rather than the rule of law, is untenable. It is worthy of note that the state statute prohibits the application of the "successive rule of three" where more than one position is to be filled from a single list. Assignment of Error number 7 is sustained.

Assignment of Error number 8 complains of the refusal of a proffer of evidence to the effect that a white officer, eligible for appointment on a previous eligibility list was not appointed solely by reason of his race. Evidence of what happened under a prior eligibility list does not relate to the issues here and would not have any value in the absence of evidence of an appointment at that time from such a list. This assignment is denied.

The final Assignment of Error is the failure of the trial court to find an attempt on the part of the defendants to favor a group or discriminate against a group on the basis of race in violation of Section 105 of the charter and, this court may add, the Constitution of the United States. There is nothing in the record that suggests that this assignment was established or has reached the magnitude of a constitutional issue.

The decision of the trial court, as indicated in its final entry dated March 19, 1975, is reversed. The scheduled examination for the former position of lieutenant and related plans for promotional examinations that violate the charter or rules of the civil service board are enjoined.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.