998 P.2d 339 (2000)
100 Wash.App. 685
Jean A. COTTON, Appellant,
v.
CITY OF ELMA, a municipal corporation; David Osgood and Rhonda Osgood, husband and wife; Dan Piper and "Jane Doe" Piper, husband and wife; Norma Johanson, a single woman; Harry Henneck, Jr., a single man; Norman Oschner and "Jane Doe" Oschner, husband and wife; "John Doe" Thurman and Debbie Thurman, husband and wife; and David Hatch, Respondents.
Nos. 23700-8-II, 24490-0-II.
Court of Appeals of Washington, Division 2.
April 21, 2000.
*342 Therese Marie Wheaton, Cotton Law Offices, Elma, Melanie K. Hantze, Olympia, for Appellant.
Donald George Daniel, Law, Lyman, Daniel et al., Daniel O. Glenn, Glenn & Hoffman Ps, Olympia, for Respondents.
Susan J. Owens, Forks, for Amicus Curiae Municipal Court Judges Assoc. *340
*341 SEINFELD, J.
In this quo warranto action, Jean A. Cotton, a former municipal court judge, claims that the City of Elma illegally appointed a replacement judge to her position. We hold that Cotton, by failing to object to the process that led to her replacement, has abandoned her claim to the office and, thus, is estopped from reclaiming the position through quo warranto.

FACTS
On January 20, 1995, City of Elma Mayor William J. Bilsland appointed Cotton as municipal court judge pro-tem to serve until the expiration of his term. The mayoral term expired December 31, 1995, but Bilsland resigned early, leaving office in March 1995.
David C. Osgood then assumed the position of mayor and, on June 12, 1995, appointed Cotton judge pro-tem to serve until the expiration of his term in December. Cotton signed the pro-tem municipal court judge oath of office for a term to expire on December 31, 1995.
In July 1995, City of Elma Municipal Court Judge Arthur A. Blauvelt III, whose term of office was not due to expire until December 31, 1997, requested a leave of absence through the end of November 1995. He requested that Cotton take over his position during his leave. Mayor Osgood granted both requests by letter dated July 21, 1995.
*343 On that same date, Mayor Osgood wrote to Cotton offering her Judge Blauvelt's position until the end of Blauvelt's leave. Cotton accepted and signed a municipal court judge's oath on October 18, 1995.
In November 1995, Osgood was elected to a full term as mayor. Later that month, Judge Blauvelt tendered his resignation. At a City Council meeting in late November 1995, the Council voted to appoint Cotton to Judge Blauvelt's position "until the position is filled/has been filled with a permanent position." Cotton was present at the meeting.
On November 30, 1995, Cotton signed a municipal court judge's oath. The oath did not indicate the term of service.
In 1996, Cotton reprimanded a court employee. The employee appealed to the Mayor, who overturned the reprimand in September 1996.
In late January 1997, the City advertised the position of municipal court judge for an unstated term. The City interviewed five of the applicants, including Cotton.
At a February 24, 1997, council meeting, the Mayor recommended the appointment of David Hatch. This elicited a bitter response from Cotton, who nonetheless concluded that she would "leave gracefully."
A majority of the council approved Hatch's appointment without discussion as to the length of the appointment. In late February 1997, Hatch signed the oath of office for an unstated term.
Two months later, on April 28, 1997, Cotton filed this quo warranto action, alleging that her removal and replacement was illegal. She sought Hatch's ouster, her own reappointment for the balance of the term, and unspecified damages. In its answer, the City asserted that (1) Cotton lacked standing, (2) her claim was barred by the doctrine of estoppel, and (3) her claim was barred by laches.
On October 20, 1997, while her quo warranto action was pending, Cotton applied for the municipal court judgeship for 1998-2001. The City Council re-appointed Hatch for the next four-year term.
Both parties moved for summary judgment. A hearing was initially set for June 5, 1998, but was continued until June 19 at both parties' request. The parties later agreed to reschedule the hearing to July 24, but, unfortunately, the trial court did not receive notice of this agreement.
When neither side showed up for the June 19 hearing, the trial court continued the matter until June 26. The parties were unaware of the new date and, thus, neither side appeared. Nonetheless, the trial court granted summary judgment in favor of the City; on July 24, it entered a written order to that effect. Cotton appealed the summary judgment to this court.
Cotton later filed a CR 60(b) motion to vacate the summary judgment, asserting, among other things, that she was unaware of the June 26 hearing date. In response, the City's attorney declared that when the City received a copy of the trial court's June 26 order, it offered to cooperate with Cotton's attorney in scheduling a rehearing. But Cotton's attorney rejected the offer.
At the CR 60(b) hearing, the trial court reasoned it would be appropriate and efficient to reconsider the summary judgment on the merits. Cotton, citing RAP 7.2(e), urged the court to do so. The City objected, urging the trial court to consider the CR 60(b) issues only and leave the summary judgment for resolution on appeal.
The trial court, in effect, engaged in a hybrid procedure. It asked Cotton to "submit affidavits containing all additional information she is requesting that the Court consider on summary judgment within 14 days." Cotton responded by resubmitting her previous exhibits attached to a new affidavit. She also submitted a declaration from her former counsel, James Dixon, who stated that both parties understood the summary judgment hearing was to be held on July 24.
The trial court denied the CR 60(b) motion, reasoning that the doctrine of estoppel in pais barred Cotton's quo warranto claim. Cotton filed a second appeal, challenging *344 the order denying her CR 60(b) motion. We consolidated the two appeals.[1]

I. MOTION TO VACATE
In reviewing the trial court's denial of the CR 60(b) motion to vacate, we apply an abuse of discretion standard. Carpenter v. Elway, 97 Wash.App. 977, 985, 988 P.2d 1009 (1999); In re Marriage of Dugan-Gaunt, 82 Wash.App. 16, 18, 915 P.2d 541 (1996); Pybas v. Paolino, 73 Wash.App. 393, 399, 869 P.2d 427 (1994). "A trial court abuses its discretion if it exercises it on untenable grounds or for manifestly unreasonable reasons." Carpenter, 97 Wash.App. at 985, 988 P.2d 1009 (citing State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)).
Cotton first complains that the trial court erred in "sua sponte" continuing the summary judgment hearing from June 5 to June 19, 1998. But the record shows counsel for both parties agreed to this continuance. Thus, this claim is without merit.
Second, Cotton contends that the trial court erred in considering the City's untimely filed summary judgment motion. The gravaman of her argument is that the late filing precluded her from filing a response brief. But Cotton did not object to the late filing or move for a continuance to allow more time to file a reply brief. Consequently, this argument is also unpersuasive.
Third, Cotton argues that the trial court should have vacated the judgment under CR 60(b)(11) because she did not give her attorney express authorization to sign the summary judgment order. But there is no indication that the attorney's signature as to the form of the summary judgment order resulted in a waiver of any appealable issues or bound Cotton to any stipulated settlement. See In re Matter of Miller, 95 Wash.2d 453, 454-55, 625 P.2d 701 (1981) (attorney signed stipulated money judgment despite lack of authorization); Morgan v. Burks, 17 Wash.App. 193, 199, 563 P.2d 1260 (1977) (vacating order of dismissal under CR 60 justified where attorney bound clients to settlement and dismissal without authority to do so). Consequently, this argument is unpersuasive as well.
Fourth, Cotton complains that she did not receive a copy of the July 24 summary judgment order in time to file a motion for reconsideration under CR 59(b).[2] But even assuming this is accurate, she did not move for reconsideration when she finally did receive the copy. Further, the trial court neutralized any prejudice when it allowed Cotton to file additional affidavits and again when it reviewed the merits of the underlying summary judgment motion. In effect, the trial court treated the CR 60(b) motion as if it were also a CR 59 motion for reconsideration.
Fifth, Cotton complains that the trial court relied on issues raised in the summary judgment motions to decide the CR 60(b) motion. But Cotton urged the trial court to do so and took advantage of the trial court's invitation to file additional affidavits. If there was any error, it was clearly invited. See State v. Wakefield, 130 Wash.2d 464, 475, 925 P.2d 183 (1996) (holding that party cannot set up error below and then complain of it on appeal).
Finally, Cotton complains that the trial court did not hear oral argument on the respective summary judgment motions. See Greenlaw v. Renn, 64 Wash.App. 499, 503, 824 P.2d 1263 (1992) (party resisting summary judgment motion is entitled to hearing). But Cotton's counsel declined to seek a new hearing, rejecting the City's offer to cooperate in the matter. Again, the trial court's failure to reschedule a hearing was invited error. Wakefield, 130 Wash.2d at 475, 925 P.2d 183.
*345 As the trial court twice considered and ruled on the merits of the summary judgment motions, we conclude that it did not abuse its discretion in denying the CR 60(b) motion.

II. SUMMARY JUDGMENT ON QUO WARRANTO
Cotton brought this quo warranto action under RCW 7.56. A person claiming an interest in an office, RCW 7.56.020, may bring an information in quo warranto against another person usurping, intruding upon, or unlawfully exercising or holding an office within a governmental authority, RCW 7.56.010(1), or when the claimant (relator) has suffered an act that works a forfeiture of her office, RCW 7.56.010(2).
If the trial court grants judgment in favor of the relator, the relator "shall proceed to exercise the functions of the office[.]" RCW 7.56.070. "When judgment is rendered in favor of the plaintiff, he may, if he has not claimed his damages in the information, have his action for the damages at any time within one year after the judgment." RCW 7.56.090. If the relator prevails, the trial court will also enter a judgment of ouster against the usurper. RCW 7.56.100.
When reviewing a grant of summary judgment, we engage in the same inquiry as the trial court. Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Bishop, 137 Wash.2d at 523, 973 P.2d 465; Taggart v. State, 118 Wash.2d 195, 198-99, 822 P.2d 243 (1992). We consider the facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Bishop, 137 Wash.2d at 523, 973 P.2d 465; Taggart, 118 Wash.2d at 199, 822 P.2d 243. And we review questions of law de novo. Bishop, 137 Wash.2d at 523, 973 P.2d 465.

A. Mootness
The City argues that Cotton's claim is moot because the term of her predecessor judge expired on December 31, 1997. Thus, it is not possible to restore her to her former position. In response, Cotton argues that her claim is not moot because she is seeking damages and declaratory relief.
Generally, quo warranto is the appropriate action for trying title to a government office with the incumbent officer named as a party to the action. Llewellyn v. Langlie, 37 Wash.2d 384, 388, 224 P.2d 321 (1950); State ex rel. Heilbron v. Van Brocklin, 8 Wash. 557, 559, 36 P. 495 (1894). But Cotton is not claiming the position Judge Hatch currently holds; nor is she arguing that Hatch is an illegal occupant of the position at this time.
"[W]here the sole purpose of the proceeding is to oust the respondent from office, it will usually be dismissed upon cessation of the respondent's office through resignation, expiration of his term, or otherwise." 65 Am.Jur.2d Quo Warranto, § 102, at 304 (1972) see also State ex rel. Coiner v. Wickersham, 16 Wash. 161, 162, 47 P. 421 (1896) (dismissing quo warranto claim because incumbent's title to office became legally valid during pendency of appeal). "But where matters in addition to the title of the respondent to the office are to be determined, or other relief granted than the mere ouster from office, the proceedings will not ordinarily be dismissed because of expiration of the respondent's term." 65 Am.Jur.2d, supra, at 304.
One remedy under the quo warranto statute is the recovery of lost salary. See Heilbron, 8 Wash. at 558, 36 P. 495 (relator ousted usurper and obtained judgment for salary lost during period of usurpation). And it may not be possible to resolve the relator's rights until after the expiration of the disputed term. See, e.g., Municipal Court ex rel. Tuberg v. Beighle, 96 Wash.2d 753, 638 P.2d 1225 (1982) (quo warranto case where municipal court magistrate appointed in 1975 was summarily dismissed in 1977; appeal decided in 1982).
Here, in addition to demanding Judge Hatch's ouster, Cotton stated a general claim for damages and asked that the matter be determined within one year after entry of the trial court judgment. Accordingly, although *346 the ouster of Judge Hatch is a moot issue, Cotton's claim for damages is not.

B. Standing
The City contends that Cotton lacks standing because Mayor Osgood did not formally reappoint her after his appointive term ended and, thus, she had no legal interest in the position as required under RCW 7.56.020. The City's argument on this point is unpersuasive.
After Osgood's election, the City Council confirmed Cotton's continuing appointment as municipal judge until it could choose a permanent judge. Cotton soon thereafter signed a new judge's oath. She then served as municipal court judge until the City replaced her with Hatch. Thus, Cotton had an interest in the position for purposes of bringing a quo warranto action. RCW 7.56.020.

C. Laches
The City asserts that the doctrine of laches bars Cotton's quo warranto action. We disagree.
"The equitable doctrine of laches is the implied waiver arising from knowledge of existing conditions and acquiescence in them." Felida Neighborhood Assoc. v. Clark County, 81 Wash.App. 155, 162, 913 P.2d 823 (1996) (citing Buell v. City of Bremerton, 80 Wash.2d 518, 522, 495 P.2d 1358 (1972)). "Laches consists of two elements: (1) inexcusable delay and (2) prejudice to the other party from such delay." Clark County Pub. Util. Dist. No. 1 v. Wilkinson, 139 Wash.2d 840, 848, 991 P.2d 1161 (2000) (citing Brown v. Continental Can Co., 765 F.2d 810, 814 (9th Cir.1985)). "[T]he main component of the doctrine is not so much the period of delay in bringing the action, but the resulting prejudice and damage to others." Wilkinson, 139 Wash.2d at 849, 991 P.2d 1161 (citing Pierce v. King County, 62 Wash.2d 324, 332, 382 P.2d 628 (1963); Vance v. City of Seattle, 18 Wash.App. 418, 425, 569 P.2d 1194 (1977)).
"A [trial] court will not presume prejudice merely from the fact of a delay." Wilkinson, 139 Wash.2d at 849, 991 P.2d 1161 (citing Vance, 18 Wash.App. at 425, 569 P.2d 1194). "The burden is on the defendant to show whether and to what extent he or she has been prejudiced by the delay." Wilkinson, 139 Wash.2d at 849, 991 P.2d 1161 (citing Vance, 18 Wash.App. at 425, 569 P.2d 1194).
A relator cannot bring an action in quo warranto until the challenged incumbent begins his or her term of office. State ex rel. Quick-Ruben v. Verharen, 136 Wash.2d 888, 900-01, 969 P.2d 64 (1998); Broyles v. Commonwealth, 309 Ky. 837, 219 S.W.2d 52, 54 (1949); 65 Am.Jur.2d, supra, § 55. And a trial court will dismiss without prejudice a quo warranto action brought between the time the future incumbent takes the oath of office and commences the term of office. Broyles, 219 S.W.2d at 54. But once the incumbent takes office, the legality of the appointment "is subject to challenge by quo warranto during the entire period of incumbency." Carleton v. Civil Serv. Comm'n, 10 Conn.App. 209, 522 A.2d 825, 828 (1987).
Here, Judge Hatch took office on or about February 27, 1997, when he signed his judge's oath. Cotton's alleged special interest in the office accrued at that time. Quick-Ruben, 136 Wash.2d at 901, 969 P.2d 64; Broyles, 219 S.W.2d at 54. Cotton timely filed her quo warranto action on April 28, 1997. Carleton, 522 A.2d at 828.
Applying general principles of quo warranto to these facts, there was no unjustified delay in the filing of Cotton's action. Quick-Ruben, 136 Wash.2d at 901, 969 P.2d 64; Carleton, 522 A.2d at 828; Broyles, 219 S.W.2d at 54. And the City has not argued facts alleging that the timing of Cotton's action resulted in any prejudice. See generally Real Progress, Inc. v. City of Seattle, 91 Wash.App. 833, 844-45, 963 P.2d 890 (1998); Coalition on Government Spying v. King County Dep't of Pub. Safety, 59 Wash.App. 856, 865, 801 P.2d 1009 (1990) (cases holding that defense of laches failed for lack of prejudice). Consequently, the doctrine of laches does not bar Cotton's quo warranto action.

D. Estoppel by Abandonment
The City also asserts that Cotton's acquiescence in the process leading to *347 Hatch's appointment estops her from reclaiming the office in quo warranto.
The rules of estoppel are applicable to those seeking relief by quo warranto. In quo warranto, as in other proceedings, a party may be precluded from alleging or denying a fact in consequence of his own previous act, allegation, or denial of a contrary tenor. And so a relator may by his acts or conduct in relation to the office in question be estopped from invoking the court's jurisdiction in quo warranto to oust the respondent.
65 Am.Jur.2d, supra, § 58; (footnotes omitted). We agree that estoppel is applicable here, although for reasons other than those argued in the City's brief. See LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989); Wendle v. Farrow, 102 Wash.2d 380, 382, 686 P.2d 480 (1984) (reviewing court can sustain trial court's judgment on any grounds established by the pleadings and supported by the evidence even if trial court did not consider such grounds).
The City argues that the doctrine of equitable estoppel bars Cotton's claim. Emrich v. Connell, 105 Wash.2d 551, 559, 716 P.2d 863 (1986). A party alleging equitable estoppel must prove:
(1) an admission, statement or act inconsistent with a claim later asserted; (2) reasonable reliance on that admission, statement, or act by the other party; and (3) injury to the relying party if the court permits the first party to contradict or repudiate the admission, statement or act.
Department of Ecology v. Theodoratus, 135 Wash.2d 582, 599, 957 P.2d 1241 (1998). "Equitable estoppel is not favored, and the party asserting estoppel must prove each of its elements by clear, cogent, and convincing evidence." Henderson Homes, Inc. v. City of Bothell, 124 Wash.2d 240, 249, 877 P.2d 176 (1994) (citing Chemical Bank v. WPPSS, 102 Wash.2d 874, 905, 691 P.2d 524 (1984)).
The City claims that it justifiably relied on Cotton's acquiescence in the hiring process for a new judge. But there is no evidence that it lacked the necessary facts to guide its appointment process. Concerned Land Owners v. King County, 64 Wash.App. 768, 778, 827 P.2d 1017 (1992) ("`Reliance is justified only when the party claiming estoppel did not know the true facts and had no means to discover them.'") (quoting Marashi v. Lannen, 55 Wash.App. 820, 824-25, 780 P.2d 1341 (1989)). Moreover, even if the City could demonstrate reasonable reliance, the doctrine of equitable estoppel does not apply to questions of law such as the validity of the City's appointment process. See Theodoratus, 135 Wash.2d at 599-600, 957 P.2d 1241; Chemical Bank, 102 Wash.2d at 905, 691 P.2d 524; Concerned Land Owners, 64 Wash.App. at 778, 827 P.2d 1017.
Nor is the doctrine of estoppel in pais, mentioned by the trial court, applicable here. Estoppel in pais generally applies where a defendant has concealed facts or otherwise induced the plaintiff to bring an action after the expiration of the applicable statute of limitations, such as in an adverse possession case. See Central Heat, Inc. v. Daily Olympian, Inc., 74 Wash.2d 126, 134, 443 P.2d 544, 44 A.L.R.3d 750 (1968); Wood v. Gibbons, 38 Wash.App. 343, 346, 685 P.2d 619 (1984); see, e.g., Miller v. Anderson, 91 Wash.App. 822, 827, 964 P.2d 365 (1998), review denied, 137 Wash.2d 1028, 980 P.2d 1281 (1999); Bullene v. Garrison, 1 Wash. Terr. 587, 590 (1878). This case does not involve the concealment of facts or an issue of the statute of limitations.
The pleadings and evidence in the record do, however, establish estoppel by abandonment. A public official who abandons his or her office is estopped from ousting the succeeding incumbent in quo warranto. See, e.g., Rainwater v. State ex rel. Strickland, 237 Ala. 482, 187 So. 484, 488, 121 A.L.R. 981 (1939); Thompson v. Nichols, 208 Ga. 147, 65 S.E.2d 603, 605 (1951); State ex rel. Flynn v. Ellis, 110 Mont. 43, 98 P.2d 879, 881 (1940); Haack v. Ranieri, 83 N.J.Super. 526, 200 A.2d 522, 529 (1964).
Courts will infer abandonment "where the conduct of the officer indicates that he has completely abandoned the duties of his office.'" Rainwater, 187 So. at 488 (quoting 46 C.J. 980 § 137); see also Ellis, 98 P.2d at 881 (quoting Rainwater with approval). The court also will infer abandonment *348 where the occupant of the office voluntarily surrenders the position due to a mistaken belief that the successor has rightful title, or where the occupant simply acquiesces in a wrongful removal or discharge. Rainwater, 187 So. at 488; Thompson, 65 S.E.2d at 604; Ellis, 98 P.2d at 881; Haack, 200 A.2d at 528.
The record here indicates that Cotton made no effort during her tenure to ascertain the validity of her own appointment or to challenge the City's actions in selecting and appointing a replacement judge. See Haack, 200 A.2d at 528 (noting that respondent "made no serious effort to discover the facts of appellant's lack of qualifications until long after the appellant had commenced her term of office"). Instead, Cotton acquiesced to and participated in the procedure she now claims is invalid. Thompson, 65 S.E.2d at 604.
Cotton remained silent throughout the hiring process, making no complaint until the Mayor announced the selection of Hatch at the February 24, 1997, City Council meeting. And even then, Cotton merely expressed her disappointment and complained about the Mayor's poor treatment of her, asserting that she was the better candidate for the position; she even stated that she would "leave gracefully."
By failing to assert a continuing claim to the office or to allege that Hatch's selection was illegal, Cotton abandoned the position. Rainwater, 187 So. at 488; Thompson, 65 S.E.2d at 605; Ellis, 98 P.2d at 881; Haack, 200 A.2d at 529. Once an official abandons her position, she cannot legally repossess it. 63C Am.Jur.2d Public Officers and Employees, § 161 (1997). "`[W]here a person has voluntarily concurred in inducing another to enter upon the exercise of an office, [she] can not afterwards come to this court to expel him from it.'" Rainwater, 187 So. at 488 (quoting Reg. v. Greene, 2 Q.B. 460, 6 Juris (1842) 777).
Because Cotton did not seek to defend her appointment when it was in jeopardy and because she participated without protest in the hiring process, she is estopped from claiming that Hatch's appointment was illegal. Rainwater, 187 So. at 488; see also Spencer v. City of Dayton, 44 Ohio App.2d 236, 337 N.E.2d 646, 652 (1975) (relators who "sit idly by" in the face of irregularities waive right to bring quo warranto action to challenge new appointees).

E. Appointment and Removal of Municipal Court Judges
Because our holding on the abandonment doctrine is dispositive, we need not reach Cotton's claim that she had the legal right to occupy the municipal court judgeship until the end of former Judge Blauvelt's term. We do note that although Cotton suggests that the City Council replaced her because of their dissatisfaction with her handling of personnel matters, the record suggests that the Council confirmed her on a temporary basis[3] in violation of RCW 3.50.093, which provides:
Any vacancy in the municipal court due to a death, disability, or resignation of a municipal court judge shall be filled by the mayor, for the remainder of the unexpired term. The appointment shall be subject to confirmation by the legislative authority of the city or town if the legislative authority has the general power of confirmation *349 over mayoral appointments. The appointed judge shall be qualified to hold the position of judge of the municipal court as provided in this chapter.
(part of chapter governing municipal courts located in cities and towns with a population of 400,000 or less, such as Elma).
If the confirmation of an office holder is done in violation of statutory authority, the appointment is a nullity and the office holder serves merely in a de facto capacity. See State ex rel. Walker v. Ramaker, 57 Wash.2d 767, 770, 359 P.2d 813 (1961); Green Mountain Sch. Dist. No. 103 v. Durkee, 56 Wash.2d 154, 157, 351 P.2d 525 (1960) (assuming school district committee members not validly elected); State v. Britton, 27 Wash.2d 336, 345-46, 178 P.2d 341 (1947) (appointed judge forfeited office while on active duty); State v. Franks, 7 Wash.App. 594, 596, 501 P.2d 622 (1972) (judge pro term not registered voter at time of appointment). A de facto officer has valid authority until displaced by the appropriate proceeding. Green Mountain School Dist., 56 Wash.2d at 158, 351 P.2d 525; Britton, 27 Wash.2d at 346, 178 P.2d 341 (reasoning that de facto judge is legal officer until ousted); see also State ex rel. Fairbanks v. Superior Court of Snohomish County, 17 Wash. 12, 16-17, 48 P. 741 (1897).
A de facto judge may be defined as one who occupies a judicial office under some color of right, who exercises the duties of the judicial office under color of authority pursuant to an appointment or election thereto, and for the time being performs those duties with public acquiescence, though having no right in fact, because the judge's actual authority suffers from some procedural defect.
46 Am.Jur.2d, Judges, § 242 (1994) (footnotes omitted).
Here, it appears that the City was without a de jure judge until it could appoint one in compliance with RCW 3.50.093. See Ramaker, 57 Wash.2d at 771, 359 P.2d 813 ("There will be no de jure mayor until the council complies with the statute to which we have referred."). Given these facts, we see no basis to hold that the City acted improperly in advertising and interviewing qualified candidates and ultimately in selecting a permanent judge for the position.
Finally, Cotton asserts in a footnote to her brief that the City Council's confirmation of Hatch was invalid for lack of a majority vote. The record, however, shows that a majority of the Council voted to confirm Hatch. The confirmation was not subject to an invalid limitation of the type applied to Cotton's confirmation. Thus, there is no showing that Hatch's appointment and confirmation exceeded the City's authority under RCW 3.50.093.[4]
Accordingly, we affirm.
MORGAN, J., and ARMSTRONG, C.J., concur.
NOTES
[1] We assigned Cause No. 23700-8-II to Cotton's appeal from the summary judgement and Cause No. 24490-0-II to her appeal from the order denying the CR 60(b) motion. We then consolidated the two appeals under Cause No. 23700-8-II.
[2] CR 59(b) requires an aggrieved party to file the motion within 10 days after entry of judgment.
[3] The record shows that a city council member moved to accept the former judge's resignation and to "keep Jean Cotton on until we ... hire a full time replacement. Whether it be her or somebody else." In calling for a vote, the Mayor summarized the motion as follows: "Okay, motion has been made and seconded we uh accept Art's resignation and bring Jean on until the position is filled, been filled with a permanent position."

Clearly the City Council was deciding whether to confirm Cotton on a temporary basis. Cotton relies on the Mayor's statement following the Council's passage of the motion: "Okay, so we took care um of the other deal there. Appointed the Municipal Court Judge for the remainder of the unexpired term[]." Even if the Mayor intended to appoint Cotton for a full term, this intent would directly conflict with the clear intent of the Council's motion.
As confirmation is a function of the City Council, Elma Municipal Code 2.52.030(C) and RCW 3.50.093, we defer to the intent of the Council as stated in the motion approved by that legislative body. Consequently, the Council confirmed Cotton on a temporary basis only in violation of RCW 3.50.093.
[4] Amicus Curiae District and Municipal Court Judges' Association (DMCJA) argues that the Mayor's action in overturning Cotton's disciplinary action regarding a court employee violates separation of powers principles and RCW 3.50.080. The statute states in pertinent part: "All employees of the municipal court shall, for all purposes, be deemed employees of the city or town. They shall be appointed by and serve at the pleasure of the court."

Court personnel are employees of the court and of the state's judicial branch for purposes of hiring, firing, and working conditions. Zylstra v. Piva, 85 Wash.2d 743, 748, 539 P.2d 823 (1975). A separation of power problem exists when another branch of government interferes with "the ultimate power of the judiciary to administer its own affairs." Zylstra, 85 Wash.2d at 749, 539 P.2d 823.
But even assuming the municipality acted improperly, as this issue is not determinative of this appeal and was not a subject of litigation below, we are unable to provide relief.